**Michael J. BORKOWSKI, MBI Financial Services, Inc., and Felbor, Inc., Plaintiffs,**

**v.**

**FRATERNAL ORDER OF POLICE, PHILADELPHIA LODGE NO. 5, John J. Shaw, Anthony M. LaSalle and Charles Gabrick, Defendants,**

**Jonathon J. Felix, Applicant for Intervention.**

**Civ. A. No. 93–CV–6800.**

United States District Court, E.D. Pennsylvania.

May 16, 1994.

Michael B.L. Hepps, Philadelphia, PA, for plaintiffs.

Thomas W. Jennings, Philadelphia, for defendant F.O.P.

John K. Weston, Philadelphia, PA, for defendants Shaw, LaSalle and Gabrick.

Jeffrey Cooper, Philadelphia, PA, for intervenor.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This is an unusual action in which Jonathon J. Felix ("Felix"), an alleged 50 percent shareholder and director of Felbor, Inc. ("Felbor"), seeks to intervene in Felbor's suit against the Fraternal Order of Police, Philadelphia Lodge No. 5 ("FOP, No. 5"), and to dismiss the action with respect to Plaintiff Felbor. Felix has filed a Motion to Intervene, pursuant to the provisions of Rule 24(a) or, in the alternative, Rule 24(b) of the Federal Rules of Civil Procedure, and requests this court to permit him to file a Notice of Dismissal of this action pursuant to Fed. R.Civ.P. 41(a) on behalf of Plaintiff Felbor. Plaintiff Borkowski is the only party opposing Felix's motions.

## I. FACTUAL BACKGROUND

Jonathon J. Felix and Michael J. Borkowski entered into a Pre–Incorporation and Shareholder's Agreement on July 16, 1992. Affidavit of Jonathon J. Felix ("Felix Affidavit"), Exhibit 1.[1] Felix and Borkowski agreed to form Felbor, Inc. for the primary purpose of selling and placing insurance risks, especially as the exclusive agent of the FOP, No. 5 with respect to certain insurance programs and most particularly disability insurance. *Id.* at 1–2. Borkowski's contribution to Felbor was the assignment of contracts to which Borkowski and MBI Financial Services, Inc. were parties, including a contract with the FOP, No. 5. *Id.* at 2–3. Felix's contribution to Felbor was to be $175,000 of which $115,000 was paid at the time of incorporation with the balance to be paid over a period of time thereafter. *Id.* at 3.

Pursuant to the Compensation Agreement between Borkowski and Felbor, Borkowski was to receive as income amounts equivalent to Felix's contributions to Felbor. Felix Affidavit, Exhibit 2. Felbor, however, did not achieve the business or profits which Borkowski anticipated. As a result of these weak profits, Felix claims that Borkowski agreed that Felix's subsequent contributions, after the initial contribution of $115,000, would be paid only as profits were realized and distributed to Felix and Borkowski. Felix Affidavit, at 4–5. In fact, additional payments of $7,000 were made by Felix to Borkowski. Felix Affidavit, Exhibit 9. Borkowski, therefore, has received approximately $122,000 under the Compensation Agreement.

In October 1992, however, the FOP No. 5 terminated its agreement with Borkowski and MBI Financial Services, Inc. Felix Affidavit, Exhibit 10. As a result, the business of Felbor collapsed. Felix commenced suit in the Philadelphia Court of Common Pleas against Borkowski, his wife, and MBI Financial Services, Inc. Motion of Jonathon J. Felix to Intervene, Exhibit 2. In this suit, Felix seeks to recover his investment in Felbor, which was paid by Felbor directly to Borkowski. *Id.*

In an effort to reach a resolution of the corporate issues and disputes between the parties, Felix then scheduled a shareholders' meeting of Felbor in June 1993 for the specific purpose of considering whether to commence action against FOP No. 5 and whether Felbor should be dissolved. Felix Affidavit, Exhibit 13. Borkowski did not attend the meeting. Because of the absence of a quorum, the meeting was never held. Felix Affidavit, Exhibit 14.

Borkowski then scheduled his own shareholders' meeting to consider the removal of Felix as director. Memorandum of Plaintiffs Responding to Questions Raised By the Court, Exhibit D. At that meeting, Borkow-

---

1. The parties agreed at oral argument that all documents attached to the Affidavits submitted with the motions and responses were true and correct copies of corporate documents. *See* Transcript of Motions' Argument, 4/29/94, pp. 27–28.

ski unilaterally decided that Felix was *not* a 50 percent shareholder of Felbor. Memorandum of Law in Support of Plaintiffs' Answer to Motion to Intervene ("Opposition Brief"), Exhibit A. Borkowski, under guidance of his counsel, proceeded to remove Felix as a director of Felbor. *Id.* Felix and his counsel subsequently advised Borkowski of their position that such actions were a nullity and contrary to fact and law. Felix Affidavit, Exhibit 19.

Subsequently, Counsel for Borkowski filed a Complaint in this court commencing this action on behalf of corporation Felbor, Inc. *See* Complaint, 12/16/93. Felix responded by filing this Motion to Intervene for the limited purpose of filing a Notice of Dismissal with respect to Plaintiff Felbor. *See* Motion to Intervene of Jonathon J. Felix ("Motion to Intervene"), 3/4/94. Felix claims that he is still a 50 percent corporate shareholder and director of Felbor, and that absent his consent, Felbor has no authority to prosecute this action. We now review these claims.

## II. DISCUSSION

### A. Motion to Intervene

Felix asserts that pursuant to Federal Rule of Civil Procedure 24(a) he has the right to intervene because he has a vested interest in the property and potential liabilities of Felbor, Inc. *See* Memorandum in Support of Motion to Intervene, pp. 2–3. In the alternative, Felix seeks permission from this court to intervene pursuant to Federal Rule of Civil Procedure 24(b). *Id.*

#### 1. Intervention of Right

■ Federal Rule of Civil Procedure 24(a) provides in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action:
>
>     \*     \*     \*     \*     \*     \*
>
> (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's

interest is adequately represented by existing parties.

To satisfy Rule 24(a)(2), an applicant for intervention must show: (1) his application is timely; (2) he has a direct interest in the subject matter of the litigation; (3) his interest would be impaired by disposition of the action without his involvement; and (4) his interest is not adequately represented by any existing party. *Harris v. Reeves,* 946 F.2d 214, 219 (3d Cir.1991), *cert. denied sub nom, Abraham v. Harris,* —— U.S. ——, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992). An applicant for intervention must meet each requirement before being entitled to intervene. *Id.*

■ First, there is no dispute that the motion is timely. In assessing the timeliness requirement, a court must consider all of the circumstances of the case, including the point to which the case has progressed, the prejudice caused to existing parties by a delay in seeking intervention, and the reasons for failing to move to intervene earlier. *Pennsylvania v. Rizzo,* 530 F.2d 501, 506 (3d Cir.), *cert. denied,* 426 U.S. 921, 49 L.Ed.2d 375, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); *Harris v. Pernsley,* 113 F.R.D. 615 (E.D.Pa.1986), *aff'd,* 820 F.2d 592 (3d Cir.), *cert. denied sub nom., Castille v. Harris,* 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). In this case, Felix's motion was filed on March 4, 1994, less than three months after Plaintiff Borkowski first filed the Complaint in this action on behalf of Felbor, Inc., and two months before Defendant FOP, No. 5 filed their Motion to Dismiss in response to said Complaint. *See* Motion to Intervene, 3/4/94. Significantly, the parties to this action have conducted very little discovery at this point in the litigation. Therefore, we find that Felix's request to intervene satisfies the timeliness requirement.

Second, Felix has a direct interest in the subject matter of the litigation. Felix alleges that he is a 50 percent shareholder, officer, and director of Felbor. *See* Motion to Intervene, 3/4/94, at 2. Felbor is a corporation without assets except for this pending litigation. *See* Opposition Brief, 3/25/94, at 5. Felbor, through the actions of Borkowski, has made allegations in this suit which Felix believes are incorrect. As a result, Felbor

has subjected itself to potential liability for costs or, in extreme circumstances, for attorneys' fees, and for counterclaims. Felix does not want Felbor to expose itself to these potential liabilities. *See* Memorandum in Support of Motion to Intervene, at 2.

■ Plaintiff Borkowski claims, however, that Felix is *not* a 50 percent shareholder of Felbor because he has failed to complete payment for his shares as required by the parties' Pre–Incorporation and Shareholder's Agreement, and, therefore, should not be able to influence the decision of the corporation to initiate this suit. *See* Memorandum of Plaintiffs Responding to Questions Raised by the Court, at 3–5. Upon review of Pennsylvania's corporations law, we find Borkowski's argument unavailing.

Pennsylvania business corporations law provides at 15 Pa.C.S.A. § 1524 as follows:

> (c) **Status of Issued Shares.**—Except as provided in subsection (e) [which is a transitional provision for implementation of the new Pennsylvania Business Corporations Act and is not applicable here], *all issued shares of a business corporation shall be deemed fully paid regardless of failure to pay in full the agreed compensation therefor.* Except as otherwise provided by a regulatory statute controlling under Section 103(c) (relating to structural provisions in regulatory statutes controlling), all issued shares of a corporation shall be nonassessable. *This subsection shall not affect the personal obligation of a subscriber for shares of a corporation to pay the agreed consideration for the shares.*

15 Pa.C.S.A. § 1524(c) (1993) (emphasis added).

If the parties intended to limit Felix's rights in any way because of a failure to pay the full amount of the subscription, such a limitation is required to be specifically agreed upon in the Subscription Agreement and to be conspicuously noted on the face or back of the stock certificate. 15 Pa.C.S.A. § 1524(d) provides:

> (d) **Rights of Subscribing Shareholder.**—Notwithstanding any other provision of this subpart, *the right to vote,* to receive dividends and to have and exercise the other rights of a shareholder *prior to payment in full* of the agreed consideration for the shares of a shareholder who has acquired his shares by subscription may be denied or limited as provided in the subscription agreement. *Any such denial or limitation of rights shall be noted conspicuously on the face or back of the share certificate, if any,* or in the notice provided by section 1528(f) (relating to uncertified shares). *Unless so noted, such denial or limitation* (even though permitted by this section) *shall be ineffective* except against a person with actual knowledge of the denial or limitation.

15 Pa.C.S.A. § 1524(d) (1993) (emphasis added).

The only notation on the back of Felix's stock certificate refers to the Pre–Incorporation and Shareholders Agreement. *See* Felix Affidavit, Exhibit 3. Nothing in that Agreement limits Felix's voting or other rights to the pro rata number of shares for which he actually paid. *See* Pre–Incorporation and Shareholders' Agreement, Felix Affidavit, Exhibit 1, at 2–4. All of the evidence appears to indicate that Felix and Borkowski intended that each would have equal rights to vote, receive dividends, and otherwise share in the corporation, regardless of when Felix completed payment of the full subscription price.[2] Thus, while Felbor

---

2. Borkowski argues that a provision in the Corporate Resolution of the Board of Directors dated July 16, 1992 indicates that the parties agreed to limit Felix's voting rights until he made full payment for all 500 shares. The provisions cited to by Borkowski state as follows:

> RESOLVED, that this Corporation [Felbor, Inc.] sell 500 Shares of its no par value common stock to JONATHON J. FELIX for the sum of $175,000, in cash, which sum is, in the opinion of this Board of Directors, fair and reasonable consideration and necessary for the business of the Corporation;
>
> RESOLVED, that the President and Secretary issue and deliver to the above persons certificates for said shares of stock, *upon receipt of the considerations provided for in the foregoing resolution.*

*See* Opposition Brief, Exhibit C (emphasis added). We find that these resolutions do not support Plaintiff Borkowski's position. There is no statement in these resolutions providing that Fe-

may have a cause of action against Felix for the balance of the subscription price owed, Felix is nonetheless a 50 percent shareholder of Felbor with full voting rights. No unilateral action by Plaintiff Borkowski can disenfranchise Felix.

■ After finding that Felix is a 50 percent shareholder of Felbor, we must find that Borkowski's efforts to press the corporation into litigation as a plaintiff is inappropriate where the other shareholder-director could claim equal authority to bring suit in the corporate name.[3] The circumstances of the organization of plaintiff corporation indicate that both parties intended that the corporation should be managed by its board of directors and that the board should take no affirmative action if not sanctioned by the consent of each director. Had the legislature intended to eliminate the problem of a deadlock it could have done so by the simple expedient of requiring an odd number of directors. Instead, apparently realizing the desire for equal control in some closely held corporations, it has continued to permit the election of a board of directors with an even number of directors.

■ The proper vehicle for a suit, when the gravamen of the complaint is injury to the corporation, and the shareholders are deadlocked, is a shareholder's derivative action. *Seifert v. Dumatic Industries, Inc.*, 413 Pa. 395, 400, 197 A.2d 454, 456 (1964) (citing *Sterling Industries v. Ball Bearing*

*Pen Corp.*, 298 N.Y. 483, 84 N.E.2d 790 (1949).

The third element for a Rule 24(a) intervention—a showing that Felix's interests would be impaired by disposition of the action without his involvement—is also met. The interests of Felix will be implicated and impaired because denial of the motion will allow Felbor, Inc. to continue in this litigation without Felix's authorization as co-director. In effect, by denying Felix's motion, this court would be granting its approval to the displacement of Felix as director of Felbor and thereby deprive him of his right to vote his 500 shares in Felbor.

Finally, Felix's interests obviously will not be adequately represented by the present parties to this lawsuit. As co-director and 50 percent owner of Felbor, Felix does not want this lawsuit to proceed on behalf of the corporation. The action itself, therefore, is adverse to Felix's interests.

■ In summary, because Felix has a vested interest in the operations of Felbor, Inc. as a 50 percent shareholder and director, and because his interest would be impaired by this action, and since no party adequately represents his interest, Felix's Motion to Intervene for the limited purpose of filing his Motion to Dismiss the Complaint with respect to Plaintiff Felbor, Inc. will be granted.

### 2. Permissive Intervention

■ In the alternative, it is clear that Felix has also satisfied the elements of per-

---

lix's voting rights shall be denied prior to payment in full of the agreed compensation. Moreover, these resolutions should not be read inconsistently with the provisions found in the Pre-Incorporation and Shareholders' Agreement. A general statement indicating that shares of stock shall be issued "upon receipt of the considerations provided for in [the Agreement]," cannot be reasonably construed to mean that Felix holds *no* shares of Felbor, Inc. Such a reading would render the Pre-Incorporation Agreement moot, and would fly in the face of the parties' subsequent conduct and operations of Felbor. We cannot accept this perverse reading of the above resolutions. Finally, these general provisions relied upon by Borkowski fall well short of the strict requirements of Pennsylvania corporations law, which demands that limitations to voting rights be specifically agreed upon and be conspicuously noted on the face or back of the stock certificates. 15 Pa.C.S.A. § 1524(d).

**3.** Borkowski claims that even if we were to find that Felix's full voting rights had vested, he could proceed with this suit on behalf of Felbor in his capacity as president of the corporation regardless of Felix's objections. We find this argument to be contrary to existing Pennsylvania corporations law. The Pennsylvania Supreme Court specifically held that the president of a corporation could not sue in his capacity as president when there is a deadlock in the board of directors. *See Seifert v. Dumatic Industries, Inc.*, 413 Pa. 395, 400, n. 6, 197 A.2d 454, 456, n. 6 (1964), *citing Sterling Industries v. Ball Bearing Pen Corp.*, 298 N.Y. 483, 84 N.E.2d 790 (1949) (holding the existence of a deadlock in the board of directors creates no extraordinary powers in the corporate president).

missive intervention pursuant to Federal Rule of Civil Procedure 24(b). Rule 24(b) states in pertinent part:

> Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the individual parties.

Intervention is proper when there is a showing that the applicant's claim has a question of law or fact in common with the main claim. *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D.Del.1990). Because Felix seeks to intervene in this action for the purpose of filing a dismissal with respect to Felbor, Inc., he does not present additional claims to the action but rather addresses the same claims brought by plaintiffs.

Moreover, as discussed above, intervention will not unduly delay or prejudice the rights of the original parties. *See State of Arizona v. Motorola, Inc.*, 139 F.R.D. 141 (D.Ariz. 1991). Felix's request to intervene is only for a limited purpose—to dismiss the action with respect to the corporation Felbor. Despite Plaintiff Borkowski's assertions, the original parties will not be prejudiced by virtue of this intervention. Borkowski claims prejudice from the fact that intervention by Felix and dismissal of the suit with respect to Felbor would effectively end this suit because the remaining plaintiffs would lack standing to proceed. Despite Borkowski's accurate assessment of the standing problem for other plaintiffs in this action, *see* discussion *infra*, his claim of prejudice is meritless. Felix is seeking relief to which he is entitled. Borkowski cannot claim that he is prejudiced

from bringing this action when he never had proper authority to commence this suit on behalf of Felbor in the first place. This court will not deprive Felix of his rights as 50 percent shareholder and co-director of Felbor simply because Borkowski wishes to continue a suit from which he individually may benefit.

For the reasons given above, this court will permit Felix to intervene in this action for the limited purpose of filing his motion to dismiss Plaintiff Felbor's complaint.

## B. Standing of Remaining Plaintiffs

· Because this court will permit Felix to intervene and dismiss the action with respect to Felbor, Inc., we now consider *sua sponte* the issue of standing for the remaining plaintiffs in the case.[4] We review the standing issue now since it raises questions relevant to our jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 229–32, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'") (citations omitted).

■ As set forth in the Complaint, the original FOP contracts, which are the basis of this lawsuit, were initially negotiated between Plaintiff Borkowski and the FOP, No. 5. *See* Complaint, 12/16/93, pp. 3–4. These contracts were eventually entered into on behalf of MBI Financial Services, of which Borkowski is president, and FOP, No. 5. *Id.*, at 4. As part of the Pre–Incorporation and Shareholder's Agreement, Plaintiff Borkowski then agreed to assign MBI Financial's contracts with the FOP to Felbor, Inc. *See* Pre–Incorporation and Shareholders' Agree-

---

**4.** In fact, Plaintiff Borkowski raised the standing issue indirectly in both his Opposition Brief to Felix's Motion to Intervene and in oral argument over the Motion. *See* Opposition Brief, p. 6; Transcript, 4/29/94, pp. 13–15. Borkowski admitted in both his written memoranda and in oral argument that if Felbor were dismissed as a plaintiff in this case, the remaining plaintiffs— Borkowski and MBI Financial Services—would face a significant standing problem. *See* Opposition Brief, p. 6 ("... the original transaction as negotiated by Borkowski, was finally entered into

on behalf of MBI [Financial Services]. MBI then assigned its rights to Felbor. Accordingly, defendants in this lawsuit can and certainly will argue that if Felbor is dismissed that neither Borkowski nor MBI has the standing to proceed."); Transcript, 4/29/94, p. 15 ("To be very clear, I do not have a theory [supporting the claim that Borkowski and MBI Financial Services have standing to sue on the claims presented in the Complaint if Felbor was dismissed as a plaintiff]. Everything was assigned to Felbor. I think that's the end of the lawsuit, quite frankly.").

ment, Exhibit 1, Felix Affidavit, pp. 2–3. We now review the question of whether Plaintiffs Borkowski and MBI Financial Services have standing to sue on claims arising out of the assigned contracts.

Article III of the Constitution limits the jurisdiction of federal courts to an actual "case or controversy." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). An "essential and unchanging" component of this jurisdictional prerequisite is that the plaintiff have standing to sue. *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992). The primary focus of the standing issue is "on the party seeking to get his complaint before a federal court." *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). The Supreme Court laid out the constitutional requirements for standing:

> Over the years, our cases have established that the irreducible minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized, *see id.* [*Allen v. Wright,* 468 U.S. 737 (1984) ] at 756 [104 S.Ct. 3315 at 3327, 82 L.Ed.2d 556]; *Sierra Club v. Morton,* 405 U.S. 727, 740–41 n. 16 [92 S.Ct. 1361, 1368–69 n. 16, 31 L.Ed.2d 636] (1972); and "actual or imminent, not 'conjectural' or 'hypothetical,' " *Whitmore, supra,* [*v. Arkansas,* 495 U.S. 149 (1990) ] at 155 [110 S.Ct. 1717 at 1722, 109 L.Ed.2d 135] (*quoting Los Angeles v. Lyons,* 461 U.S. 95, 102 [103 S.Ct. 1660, 1665, 75 L.Ed.2d 675] (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41–42 [96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450] (1976). Third, it must be "likely," as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." *Id.* at 38 [96 S.Ct. at 1924].

—— U.S. at ——, 112 S.Ct. at 2136, 119 L.Ed.2d at 364. In short, the three constitutional requirements are injury, causation and redressability.

The doctrine of standing is a blend of the three constitutional requirements and related prudential considerations. These latter principles also number three: (1) that the plaintiff does not rest the claim on third parties' rights or interests; (2) that the plaintiff's injury does not amount to a generalized grievance; and (3) that the plaintiff's injury is to an interest within the zone protected or regulated by the statute or constitutional guarantee. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474–75, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982).

The parties to this action have come forth with sufficient evidence for this court to find that Plaintiffs Borkowski and MBI Financial Services do not meet either the constitutional or prudential standing requirements. Plaintiffs bring claims that arise out of the FOP contracts that were assigned to Felbor, Inc. It is undisputed that MBI Financial Services, through its president Borkowski, unequivocally conveyed to Felbor "all of its rights, interests and benefits in and to that certain Agreement between MBI and Philadelphia Lodge No. 5, Fraternal Order of Police." Pre–Incorporation and Shareholders' Agreement, Felix Affidavit, Exhibit 1, p. 2. Therefore, because MBI Financial Services and Borkowski validly assigned the FOP contracts to Felbor, and since we are now allowing Intervenor Felix to dismiss this case as to Felbor, the remaining plaintiffs cannot show an "injury in fact" or "causal connection" of defendant's acts to any alleged injuries suffered by Borkowski and MBI, which are independent of Felbor. According to Pennsylvania contract law, a party lacks standing to pursue claims that arise out of a contract that was legally assigned. *See West Penn Administration v. Pittsburgh National Bank,* 289 Pa.Super. 460, 433 A.2d 896, 902 (1981); *ADW Inc. v. Lutheran Social Mission Society,* 1988 WL 100311, *2, 1988 U.S.Dist. LEXIS 10708, *6, (E.D.Pa.1988). Plaintiffs Borkowski and MBI Financial Services clearly rest their claims on a third

party's rights or interests. These remaining plaintiffs could not possibly have incurred damages on contracts to which they are no longer parties.

■ Moreover, in response to Plaintiff Borkowski's claim that he has standing to proceed with this suit as president and 50 percent shareholder of Felbor, courts have held that in the absence of a direct individual injury, a corporate shareholder or officer lacks standing to sue for an injury to the corporation. *See Flynn v. Merrick*, 881 F.2d 446, 450 (7th Cir.1989); *Warren v. Manufacturers National Bank of Detroit*, 759 F.2d 542, 544 (6th Cir.1985); *Defeo v. Sill*, 810 F.Supp. 648, 655 n. 5 (E.D.Pa.1993). More specifically, the president and principal shareholder of a corporation cannot claim damages to a corporation as his own. *See Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439 (9th Cir.1979) (president and sole shareholder of California corporation lacked standing to pursue claims for injuries to corporation); *Jones v. Niagara Frontier Transportation Authority*, 836 F.2d 731, 736 (2d Cir.1987) ("A shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation"); *American Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 (D.C.Cir.1984). Therefore, Plaintiff Borkowski cannot bring suit as president and corporate shareholder to recover damages suffered by Felbor.

For the foregoing reasons, the court will dismiss Plaintiffs Borkowski and MBI Financial Services as parties to this action for lack of standing, pending the expected Notice of Dismissal from Plaintiff Felbor, which shall be filed by Intervenor Felix.

### III. CONCLUSION

For all of the above reasons, the court will grant Jonathon J. Felix's Motion to Intervene pursuant to Rule 24(a) or, in the alternative, Rule 24(b) of the Federal Rules of Civil Procedure, and thereby permit him to file a Notice of Dismissal of this action pursuant to Federal Rule of Civil Procedure 41(a) on behalf of Plaintiff Felbor, Inc. Pending the filing of such Notice, the court also will dismiss the case with respect to the remaining Plaintiffs Borkowski and MBI Financial Services, Inc. for lack of standing.

An appropriate order is attached.

### ORDER

AND NOW, this 16th day of May, 1994, upon consideration of the Motion of Jonathon J. Felix to Intervene, filed on March 4, 1994, as well as Plaintiffs Response and Reply thereto, filed on March 25, 1994, and after hearing oral argument in court, it is hereby **ORDERED** that the Applicant for Intervention's Motion is **GRANTED**. Jonathon J. Felix is permitted to intervene in this action and may file his proposed Notice of Dismissal with respect to Plaintiff Felbor, Inc. if he does so within fourteen (14) days of the date of this Order. **IT IS FURTHER ORDERED** as follows:

1. The claims of Plaintiffs Borkowski and MBI Financial Services, Inc. are hereby **DISMISSED** without prejudice for lack of standing pending the expected filing of the Notice of Dismissal of Plaintiff Felbor, Inc.;

2. Defendant's Motion to Dismiss Plaintiffs' Complaint, filed on April 28, 1994, is **DENIED** as moot at this time without prejudice to refile the same if the expected Notice of Dismissal is not filed.