United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 29, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
for the Fifth Circuit

No. 02-20461

**TRANS CHEMICAL LTD; ET AL**
**Plaintiffs**

**TRANS CHEMICAL LTD**
**Plaintiff-Appellee**

**SARDAR A DAUD KHAN; SHAHWAR DUAD KHAN**
**Intervenor Plaintiffs-Appellants**

**VERSUS**

**CHINA NATIONAL MACHINERY IMPORT AND EXPORT CORPORATION; ET AL**
**DEFENDANTS**

**CHINA NATIONAL MACHINERY IMPORT AND EXPORT CORPORATION**
**Defendant-Appellee**

**Appeal from the United States District Court**
**for the Southern District of Texas**

Before DeMOSS, STEWART, Circuit Judges, and FALLON,[1] District Judge.

FALLON, District Judge:

Before the Court is the appeal of Plaintiffs-Intervenors, Sardar A Duad Khan and Shahwar

Duad Khan ("the Khans"), from the District Court's denial of their motion for intervention. The main

_____

[1] District Judge for the Eastern District of Louisiana, sitting by designation.

demand in the case is the enforcement of an arbitration award in favor of TCL and against defendant-appellee China National Machinery Import and Export Company ("CMC"). The Khans sought to intervene in the District Court to litigate the issue of whether they are the proper owners of the Plaintiff-Appellee corporation, Trans Chemical Limited ("TCL"). The District Court denied the Khans' intervention on corporate ownership three times, but did allow intervention on the issue of arbitration-related expenses. After considering issues of appellate jurisdiction, the proper standard of review, intervention of right, and permissive intervention, this Court AFFIRMS the decision of the District Court.

## I.    BACKGROUND & PROCEDURAL HISTORY[2]

The facts giving rise to this litigation began in 1987 when Dr. Shardar Khan and Dr. Mohammed Halipoto, American citizens and natives of Pakistan, decided to build the first hydrogen peroxide plant in Pakistan. To accomplish this goal, Khan and Halipoto formed two companies. The first was United International, a partnership established under Texas law, and the second was TCL, a subsidiary of United International and a corporation formed under Pakistani law. TCL was later converted to a public entity, with the Khan and Halipoto each owning 50% of the stock of the company.

TCL obtained financing for the project from the Industrial Development Bank of Pakistan ("IDBP") and the Investment Corporation of Pakistan ("ICP"). As security for the loans, the following assets were pledged: the proposed chemical plant, 40% of TCL's stock, and the personal guarantees of Khan and Halipoto. Between 1987 and 1993, the loans to TCL totaled approximately

---

[2]Additional facts surrounding this litigation may be found in the District Court's initial opinion in this matter, *In re Arbitration between Trans Chemical Ltd. and China National Import and Export Corp.*, 978 F. Supp. 266 (S.D. Tex. 1997), *aff'd* 161 F.3d 314 (5th Cir. 1998).

2

$7.3 million.     TCL contracted with CMC to build the plant in Pakistan.  The contract between CMC and TCL contained a provision mandating arbitration of any disputes in Houston, Texas.  In 1988, Dr. and Mrs. Halipoto filed for personal bankruptcy under Chapter 11 of the Bankruptcy Code in the Southern District of Texas.  They were granted a partial discharge in August 1990, but the case remained open so the trustee could administer and sell property of the estate.  In 1994, after disputes arose concerning the building of the plant, TCL and CMC submitted their claims for arbitration in Houston.  TCL hired the Houston law firm, Beck, Redden, Secrest ("BRS") to represent them in the arbitration proceeding, which was scheduled to begin in June, 1995.  On June 1, 1995, CMC initiated an adversary proceeding in the Halipotos' bankruptcy case against TCL, the Khans, the Halipotos, and the Halipotos' bankruptcy trustee, arguing that the arbitration involved property of the Halipotos estate, that TCL, Khan, and Halipotos, and Khan exercised unauthorized control over the estate property, and that the arbitration provision in the 1988 contract between TCL and CMC was fraudulent because CMC was not aware of the Halipotos' pending bankruptcy.  The Bankruptcy Court refused CMC's request to stay arbitration.

On August 15, 1995, the arbitration panel awarded more than $9.4 million to TCL.  TCL then immediately filed suit in the Southern District of Texas to confirm and enforce the arbitration award.  CMC challenged the court's subject matter jurisdiction, but the District Court rejected this argument and confirmed the award.  *See In re Arbitration between Trans Chem. Ltd. and China Nat'l Mach. Import & Export Corp.*, 978 F. Supp. 266 (S.D. Tex. 1997).  The parties appealed to this Court, which affirmed, stating simply "We agree with the District Court's analysis of these issues and therefore adopt Parts I-V of its careful and comprehensive opinion."  *Trans Chem. Ltd. v. China Nat'l Import and Export Corp.*, 161 F.3d 314, 319 (5th Cir. 1998).

3

While these matters were pending before the District Court and Court of Appeals, TCL defaulted on its loans from the IDBP and ICP in Pakistan. In April, 1996, an attorney for the IDBP sent a letter of default to the Khans and Halipotos. The Khans allege that they never received that letter because it was improperly addressed. On May 15, 1996, IDBP initiated foreclosure proceedings against TCL in Pakistan to collect on unpaid loans totaling more than $8.6 million. The Pakistani court issued an interim attachment of TCL's property. The Khans again allege that they never received notice of this proceeding because the address used on court documents was not the Khans' proper address.

In September, 1996, BRS, the attorneys for TCL, wrote the IDBP and thanked them for contacting Drs. Khan and Halipoto regarding the outstanding loan balance. The letter further requested the bank's indulgence while TCL attempted to collect on the arbitration award against CMC.

In December, 1996, the Pakistani court affirmed its interim attachment of TCL's property and directed the sale of the company's assets. That order also contained an incorrect address for the Khans and Halipotos. Advertisements were placed in Pakistani newspapers to announce the sale of the plant. On June 3, 1997, New Orient International Limited ("New Orient") offered to buy the plant, contingent on all of TCL's equity shares being assigned as well. However, the Khans and Halipotos had pledged only 40% of their shares in TCL to secure the loans so the bank had to take additional measures to complete the sale.

Thereafter, on July 8, 1997, ICP wrote Mrs. Khan at the correct address and notified her that ICP planned to auction TCL's shares of stock pledged as collateral if the debt was not timely paid. The letter further stated that if the sale of these shares was insufficient to satisfy the loan, the bank

would then proceed to sell the Khans' personal property, including the shares not pledged, under the personal guaranty signed by the Khans at the time the loans were extended. A week later, IDBP moved the Pakistani court to cancel the outstanding shares of stock in TCL. On July 23, 1997, Dr. Khan wrote a Pakistani attorney to engage his services to prevent the sale of his shares in TCL. The attorney subsequently declined representation, stating that TCL's problems with the banks "requires immediate and time consuming attention which we are not in a position to provide."

The Khans reportedly continued to contact the IDBP and ICP, but to no avail. On November 13, 1997, the Pakistani court issued an order cancelling their shares of TCL and directing that they be re-issued to New Orient. The following month, CMC advised the District Court in Houston that it had received from New Orient notice of a change in ownership of TCL. New Orient also contacted BRS to inform the firm of the change in ownership. New Orient requested that BRS cease dealing with the Khans and Halipotos; rather, New Orient asserted that it had the right to collect the arbitration award directly from CMC. New Orient then brought an action in Beijing, China to enforce the arbitration award against CMC.

At this point, the Halipotos' bankruptcy trustee, who had learned of New Orient's involvement with the case, moved for an injunction in the Bankruptcy Court to prevent CMC from negotiating settlement of the arbitration award outside the bankruptcy proceeding. On January 14, 1998, the Bankruptcy Court held a hearing, in which Dr. Khan testified regarding the loss of his shares and his discussions with IDBP and ICP. Dr. Khan further testified about the incorrect addresses on the documents filed with the Pakistani court and his lack of notice of that court's decision. At the conclusion of the hearing, Bankruptcy Judge Karen Brown granted the injunction. She found that the Pakistani proceeding to cancel the shares was done ex parte and that the addresses

5

for the Khans and Halipotos were either incorrect or were no longer used by the shareholders. Further, she found that the banks knew of the shareholders' current addresses, but intentionally failed to include this in their petitions to the Pakistani court. Judge Brown found that the transaction was designed to defeat the protections of TCL's interests in the arbitration award, as determined by the District Court. She then ordered that the amount of the award be placed into the registry of the court and enjoined CMC from proceeding with other litigation until the rights of the parties could be determined.

In March, 1998, the Khans filed a request with the court in Pakistan to vacate the foreclosure. However, two months later, the Khans withdrew the request, claiming that it was "without prejudice" to their rights to "agitate the matter at any other stage."

Despite the Bankruptcy Court's injunction, New Orient continued to pursue CMC for collection of the arbitration award in China because they could not find any of CMC's assets in the United States even after the court appointed a receiver to search for CMC's assets in the United States. CMC also refused to comply with the court's order to deposit the funds in the registry of the court. As a result, the District Court imposed sanctions against CMC; by August, 1999, those penalties amounted to more than $20 million.

In November, 1998, the Beijing court granted New Orient's motion to enforce the arbitration award and ordered CMC to transfer the full amount to New Orient's bank account in Beijing. This was done, and TCL has been paid the amounts due under the arbitration award. In May, 1999, TCL and CMC filed a joint motion to dismiss the District Court case in Houston. New Orient then filed a disputed motion to substitute counsel for BRS. BRS was seeking to intervene in the matter to collect its contingency fees on the litigation proceeds and enforce their attorney's lien on the

6

judgment.

Ten days after BRS moved to intervene, the Khans filed their motion to intervene and opposed the motions to substitute counsel and dismiss the proceedings. Thereafter, in August, 1999, the Halipotos, individually and through their bankruptcy trustee, filed motions to intervene. The District Court granted BRS's intervention and motion for substitution of counsel and denied the motions to intervene filed by the Khans and Halipotos, individually. The Court granted the trustee's motion because the trustee had secured an injunction in the Bankruptcy Court to prohibit exactly the type of action that had occurred in this case. The court then denied the joint motion to dismiss, finding that the settlement between New Orient and CMC was a direct violation of the Bankruptcy Court's order.

The Khans then field a motion to reconsider, which was partially granted to permit intervention on the Khans' claims for expenses. However, the court denied the motion in all other respects, but stated that its denial was "without prejudice to being re-urged if the Bankruptcy Court denies the Khans a forum as to the issue of the Khans' interest in shares of TCL." During the hearing on the motion, the district judge told the Khans that if they were not satisfied with the Bankruptcy Court's ruling, they could appeal that matter to him; otherwise, the District Court found that the dispute should be resolved before the Bankruptcy Court. The Khans sought to appeal this ruling, but this Court affirmed, stating simply "We affirm for essentially the same reasons stated by the able District Court." *Trans Chemical, Ltd. v. China Nat'l Mach. Import and Export Corp.*, No. 99-20895 (5th Cir. June 11, 2001) (per curiam) (unpublished). This Court found that the appeal was essentially premature because the District Court indicated its willingness to entertain the motion again after the Bankruptcy Court had ruled.

7

The Bankruptcy Court thereafter entered an order of civil contempt against CMC and New Orient/ TCL. The parties subsequently entered a settlement agreement for $80,000 contingent on the Bankruptcy Court abstaining from deciding the Khans' ownership interest. In the Order Approving Compromise and Settlement, entered October 16, 2001, the Bankruptcy Court stated:

Upon the Trustee's receipt of the Cash Settlement Payment, the Trustee, TCL and CMC agree and stipulate and the Court finds and concludes as follows:

a. The Arbitration Award entered in favor of TCL is a corporate asset of TCL and is not an asset of any shareholder of TCL, including but not limited to any person, trust, corporation, or other entity, and the ownership of TCL shares does not entitle any individual shareholder to any direct claim for relief or damages for any action or inaction regarding the Arbitration Award.

b. The resolution of all remaining issues regarding the ownership of TCL and its assets (i) is a matter of Pakistan law ...; (ii) no longer involves the Trustee or the Bankruptcy estate; (iii) requires the presence of parties not currently before the Bankruptcy Court; and (iv) is a matter on which the Court will abstain in favor of a court of competent jurisdiction, including the courts of Pakistan, with jurisdiction over all of the necessary parties.

On December 13, 2001, Judge Brown then entered an Order Dismissing and Closing Adversary Proceeding, which stated that "all matters between the Trustee, ... [TCL]... and ... [CMC] have been resolved. The Court shall abstain with respect to all remaining matters." The Khans took no action with regard to these rulings from the Bankruptcy Court. On December 28, 2001, the District Court dismissed the claims of the trustee and estate against TCL and CMC.

On December 21, 2001, the Khans moved for leave to file an amended complaint in intervention again seeking to litigate the issue of TCL's corporate ownership. On February 25, 2002, the District Court issued a written order and reasons denying the Khans' motion for leave to file an

8

amended complaint in intervention. The District Court found that the Bankruptcy Court's holding in the Order Approving Compromise and Settlement did not deny the Khans a forum; rather, it found that the courts of Pakistan were an appropriate forum. The judge further noted that this decision would have to stand because the Khans had not appealed that decision or the Bankruptcy Court's decision "to 'abstain in favor of a court of competent jurisdiction.'" The Court further concluded that the Khans made a knowing decision to form a Pakistani corporation and borrow from a Pakistani bank. The Court expressed its reluctance to re-litigate these matters when the other parties to the Pakistani proceeding were not before the District Court. Finally, the Court concluded that "[t]he Khans have known since 1997 that the Pakistani courts canceled their shares. If they thought that the Pakistani court was wrong, they should have sought relief in Pakistan." It is from this order that the Khans take this appeal.

## II. Whether the District Court's Order was a Final Order for the Purposes of Appellate Jurisdiction

The Khans appeal from the District Court's order denying leave to file an amended complaint in intervention. However, the parties briefed the issue, and the District Court considered the issue, as a complaint in intervention, rather than one seeking leave to amend. Accordingly, this Court will similarly construe the District Court's order as denying a complaint in intervention.

Before reaching the merits of this appeal, this Court must first determine whether it has jurisdiction to hear this appeal. Rule 24 of the Federal Rules of Civil Procedure defines two types of intervention: intervention of right (Rule 24(a)); and permissive intervention (Rule 24(b)). Appellate jurisdiction over orders denying relief under Rule 24 varies depending on whether relief is sought under Rule 24(a) or Rule 24(b). Because the Khans assert they are entitled to either

9

intervention of right or permissive intervention, this Court must consider its jurisdiction in each context.

This Court clearly has appellate jurisdiction from the denial of a motion to intervene as of right. *See Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc). However, if a motion for permissive intervention is denied, this Court operates under an "anomalous rule" that provides jurisdiction only to consider whether the district court abused its discretion denying the motion. *Id.* If it did, the Court retains jurisdiction and must reverse; if it did not, the Court must dismiss for lack of jurisdiction. *Id.*

## III.    Standard of Review

As noted above, this Court must determine whether the Khans were entitled to either intervention of right or permissive intervention. This Court reviews *de novo* denials of intervention of right. *Id.* at  995. Orders denying permissive intervention are reviewed for "clear abuse of discretion" and will be reversed only if "'extraordinary circumstances'" are shown. *Id.*

## IV.    Whether the District Court Erred in denying the Khan' Motion for Leave to Amend their Complaint in Intervention as a Matter of Right.

Rule 24 of the Federal Rules of Civil Procedure states that intervention of right is to be permitted upon timely application "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." FED. R. CIV. P. 24(a). Timeliness of intervention depends on a review of all the circumstances, and the Fifth Circuit has identified four factors to consider:  (1) the length of time the intervenor knew or should have known

10

of his interest in the case; (2) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (3) prejudice to the intervenor if his application for intervention is denied; and (4) the existence of unusual circumstances. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

The Khans' first motion for intervention was filed on June 10, 1999. It is undisputed that the latest date on which the Khans were aware of the challenge to their ownership of TCL was December 21, 1997 when TCL's attorneys received correspondence from New Orient informing counsel of the change in TCL's ownership. At that point, the Halipotos' bankruptcy trustee moved for an injunction to prohibit TCL and CMC from settling the arbitration judgment outside of the federal court action. Dr. Khan participated in that hearing, in which the injunction was granted on January 14, 1998. However, the Khans waited more than a year to bring any action in the District Court to recover their shares.

Appellants argue that their delay in moving to intervene was based on the belief that TCL's attorneys, BRS, were representing their interests by participating in the action for an injunction before the Bankruptcy Court. The Khans contend that they were not aware of the need to intervene in the matter until BRS sought to withdraw its representation of TCL before the District Court. These arguments fail for two reasons. First, BRS represented TCL and not the Khans, individually. Any duties BRS owed were to TCL and not the Khans. Second, The Khans are undone by their arguments concerning appeal from the Bankruptcy Court's orders. They assert that even if the Bankruptcy Court had determined the issue of ownership of the corporation, the parties would then have had to return to the District Court on that issue to have the Bankruptcy Court's findings accepted by the District Court to undo the substitution of counsel. The Khans argue that the only

11

effective remedy for them in this case is intervention, and appeal from the Bankruptcy Court was not necessary. In effect, they argue that the Bankruptcy Court action was not necessary to protect their interests.

The Khans cannot have it both ways. They cannot argue first that the Bankruptcy Court was protecting their interests, and, second, that the Bankruptcy Court action was not necessary since the only relief available was intervention in the District Court. Since the Khans assert that their only remedy in this case was intervention, they should have moved to intervene immediately in the District Court. The failure to wait more than 1 ½ years to do so is untimely.

Aside from considerations of timeliness, the Khans' appeal also fails for a second reason; they have failed to articulate an interest in the subject matter of the litigation. In *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984) (en banc),this Court held that the applicant's interest relating to the subject of the action must be "direct and substantial" and must be "something more than an economic interest." *Id.* at 463. As shareholders in TCL, they have an economic interest in the award, but this is not direct and substantial as required under Rule 24 and this Court's ruling in *New Orleans Public Service*.

The Khans rely on *Borkowski v. Fraternal Order of Police*, 155 F.R.D. 104 (E.D. Pa. 1994), to support their argument that a shareholder may intervene in litigation to assert issues of corporate control. In *Borkowski*, the corporation was equally owned by two shareholders, who were also the corporation's directors. The corporation entered into an agreement with the defendants for the sale of insurance risks. The defendant thereafter terminated the agreement, and the corporation's business faltered. The shareholders disagreed among themselves on whether litigation was necessary. One of the shareholders unilaterally determined that the other shareholder was no longer a 50%

12

shareholder and removed him as director. Thereafter, as the sole director, he initiated the corporation's lawsuit against the defendant. The deposed shareholder then sought intervention in the suit solely to assert its rights as shareholder and dismiss the litigation. The District Court permitted the intervention, but expressly limited the intervention to permit dismissal of the corporation's complaint. *Id.* at 110.

The Khans' situation, however, is distinguishable from the facts of *Borkowski*. The Khans do not seek to intervene to dismiss the case. They wish to pursue a cause of action wholly separate and apart from the underlying cause of action. They do not have a claim against CMC, the defendants in the case. They wish to litigate an issue much different from the issues defined by the initial pleadings in this case, which concerns the enforcement of an arbitration award. Any claims the Khans have arising out of the loss of their shares are against TCL, New Orient, and the Pakistani banks. Only TCL is before the District Court below; neither New Orient nor the Pakistani banks are involved in this litigation.

Appellees refer this Court to *Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180 (S.D. Tex. 1986), in which the court denied shareholders leave to intervene in a cause of action brought by their corporation. The court in *Rigco* noted that an intervenor's interest in a cause of action is to be read narrowly. Further, any cause of action the shareholder has must be against the defendants in the case. *Id.* at 183. In this case, the Khans' asserted intervention on the issue of corporate ownership is not a cause of action against CMC. Their claims for expenses do arise out of that litigation and were properly allowed to proceed. The same holds true for the interventions of the trustee and BRS. Those parties claimed a right of action arising out of the arbitration award, which the main demand was seeking to enforce and collect. Here, the Khans' ownership claims are

13

separate from that action. Again, intervention is not appropriate.

Finally, the Khans ask this Court to take note of the problems surrounding litigation of the ownership issues in Pakistani courts. The Khans assert that being required to litigate these issues is difficult because of the problems with the court system in that country and the fact that the United States State Department has warned against travel to Pakistan. During oral argument, counsel referred this Court to decisions of the Second[3] and Ninth[4] Circuits wherein those courts held that foreign judgments could be challenged in this Court because of problems arising from the judicial system of those countries. The Khans argue that this Court should permit them to challenge the ownership proceedings in these proceedings. The Court, however, finds these cases unpersuasive and distinguishable from the present case. Both cases involve matters in which the foreign company and the party cast in judgment were directly before the District Court.[5] In other words, there was no intervention, and all the parties necessary to challenge the foreign judgments were before those courts. As this Court has noted above, the Khans' motion for intervention comes too late and is too dissimilar to the underlying case before the District Court for intervention to be proper. The Court finds that any unfairness in the Pakistani legal system does not outweigh the inefficiencies of keeping this case open to litigate entirely different issues against entities that are not presently before the

---

[3]*Bridgeway Corp. v. Citibank*, 201 F.3d 134 (2d Cir. 2000).

[4]*Bank Melli Iran v. Pahlavi*, 58 F.3d 1406 (9th Cir. 1995).

[5]For example, in *Bridgeway Corp.*, a Liberian corporation brought suit in the United States seeking to enforce the judgment of a Liberian court against the defendant; the Second Circuit affirmed the District Court's grant of summary judgment in favor of the defendant based on a finding that the Liberian judicial system was incompatible with notions of due process. *Bridgeway Corp.*, 201 F.3d at 137. Similarly, in *Bank Melli Iran*, the Ninth Circuit affirmed the District Court's findings that it was not possible for the defendant to have obtained due process of law in an Iranian court. *Bank Melli Iran*, 58 F.3d at 1407.

14

Court.

In conclusion, the Khans' attempt to intervene to litigate the issue of corporate ownership was not timely as it was filed well after the Khans were aware that their ownership interest in TCL was at stake. Further, the intervention seeks to litigate issues wholly separate from the main demand. Accordingly, the District Court's refusal to permit intervention as a matter of right is AFFIRMED.

## V. Whether the District Court Erred in Denying the Khans' Motion for Leave to Amend their Complaint to Assert Permissive Intervention

Rule 24(b)(2) states that permissive intervention is appropriate where "an applicant's claim or defense and the main action have a question of law or fact in common." FED. R. CIV. P. 24(b)(2). As noted above, this Court will reverse a district court's denial of permissive intervention only in "extraordinary circumstances" where the district court has abused its discretion. *Edwards*, 78 F.3d at 995.

In this case, the main action is the claim brought by TCL for the enforcement of the arbitration award against CMC. It is not related to the Khans' arguments pertaining to corporate ownership. Furthermore, the District Court permitted the trustee to intervene, distinguishing its claims from those of the Khans, stating that "the bankruptcy trustee is allowed to intervene for the purpose of enforcing the injunction against CMC and arguably against TCL. In this regard, there's no new claim that's going to be asserted by the bankruptcy trustee, such as the new claims that Drs. Khan and Halipoto sought to assert." There is no disparate treatment between the relief granted the trustee and the relief refused the Khans.

Thus, the trustee's claims related to the injunction, which was issued based on the judgment

15

pertaining to the arbitration award. As the Khans have failed to show a common question of law or fact between TCL's claims against CMC, permissive intervention is not appropriate. This Court finds that the District Court did not abuse its discretion in denying the Khans' request for permissive intervention. Accordingly, the District Court's decision is AFFIRMED.

## VI. Conclusion

For the foregoing reasons, the Khans' motion for intervention on the issues of corporate ownership was untimely, as they clearly had notice that their interests in TCL were challenged more than 1 ½ years before moving to intervene. Furthermore, the Khans have failed to demonstrate that they have a sufficient interest in the outcome of the litigation, which was brought to enforce an arbitration award. They are merely shareholders of the corporation, and any interest they claim in the main demand is a derivative interest. This is not sufficient to maintain an intervention of right. As to permissive intervention, the Khans have failed to show that the District Court abused its discretion when it denied permissive intervention. Accordingly, the District Court's order denying intervention is AFFIRMED.