IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 17, 2005

Charles R. Fulbruge III
Clerk

_____

NO. 04-30356
_____

JOANN GRAHAM,

Plaintiff-Appellee;

UNITED STATES OF AMERICA,

Intervenor Plaintiff-Appellee,

versus

EVANGELINE PARISH SCHOOL BOARD,

Defendant-Appellee,

versus

EVANGELINE PARISH CHAPTER NATIONAL ASSOCIATION OF
NEIGHBORHOOD SCHOOLS; JAMES KIRT GUILLORY; RANDY MCCAULLEY;
ERIC KENT GUILLORY; GREG ARDOIN; JEFF LEBLANC; EDDIE
DOUGLAS; GAIL MCDAVID; MATT MARCANTEL; JOYCIE MAE THOMAS;
ODELIA A BOYKINS; STEVEN CRAIG THIBODEAUX; LEAH D
DUPLECHAIN; LUCY JONES GREEN; JOSEPH EUGENE MCDAVID,

Movants-Appellants.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:05-CV-11053

_____

Before GARWOOD, JONES, and PRADO, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This appeal arises from the district court's denial of Appellants' motion to intervene in a forty-year-old school desegregation case. Because Appellants have failed to demonstrate their entitlement to intervene as of right or permissively under Rule 24 of the Federal Rules of Civil Procedure, we AFFIRM the district court's denial and DISMISS the appeal.[**]

## BACKGROUND

The entire history of this case is set forth at length by the district court and need not be repeated here. See Graham v. Evangeline Parish School Bd., 223 F.R.D. 407, 410-32 (W.D. La. 2004). In sum, from the inception of the case in 1965 until well into the 1990s, Evangeline Parish complied unenthusiastically and half-heartedly with federal desegregation decrees.

In September 1996, the case was assigned to Judge Tucker L. Melancon, who began a series of meetings with the parties regarding persisting compliance problems cited in Department of Justice ("DOJ") reports. Joint consent decrees were entered in 1997 and 1998. By May 2001, the Government requested a status conference to resolve the parties' contentious and strained relations. With the permission of the School Board, its Acting Superintendent, the school district's central office staff, the school district's fourteen principals, and the United States, the

---

[**]     Judge Prado concurs in the judgment only.

2

district court began conducting individual meetings with the parties and with individual School Board members regarding compliance issues. Another joint superseding consent decree followed, mandating, inter alia: (1) racial diversification of the school district's supervisory personnel; (2) affirmative action-based faculty hiring and assignment; (3) increased school desegregation; (4) attendance zone modifications; (5) restrained transfer requirements; (6) semiannual reports; (7) quarterly meetings; (8) amelioration of disparate facilities and resource distribution; (9) establishment of a biracial committee to act in furtherance of unitary status; and (10) development of a constitutionally compliant desegregation plan by the Superintendent, his appointed committee, the DOJ, and existing parties. It seems, from the court's own account, that many of the provisions of the 2001 decree were included at its "insist[ence]," and under the threat of even greater superintendence by the court. See Graham, 223 F.R.D. at 429 (alluding to the decision of another federal judge, years earlier, to significantly reduce the number of schools within a neighboring parish several weeks before the school term).

At an open school board meeting in February 2003, a school district representative publicly disclosed that a compliance plan was in development. In May 2003, James K. Guillory and others

3

founded an Evangeline Parish chapter of the National Association for Neighborhood Schools ("NANS"). NANS's stated mission was to end race-based and socioeconomic-based school assignments and restore the neighborhood school concept. In late 2003, the members of NANS became aware that the Superintendent was drafting a desegregation plan. On September 18, 2003, NANS, in coordination with the named Appellants (collectively "Appellants"), filed a motion to intervene in this case. The United States opposed Appellants' motion, while the School Board did not take a position other than to maintain that it could adequately represent the interests of the school district.

When Appellants served the school district with public information requests, pursuant to LOUISIANA REV. STAT. § 44:1, et seq., for information related to the development of the plan, they were refused. Sometime after issuing the 2001 decree, the district court had instituted a "gag order" that precluded the school administrators who were formulating the reorganization plan from publicly disclosing any information about the plan before its presentation to the School Board. This order was the basis for the denial of Appellants' requests. The administrators were even forbidden to discuss the plan with School Board members. After receiving information that a member of the committee was leaking information about the consolidation plan, the district court

4

conducted an on-the-record meeting with each administrator individually to address the leak and reiterate the seriousness and consequences of breaching the gag order. The district court invoked the possibility of perjury if false statements were made during the meeting.

In late 2003, the committee of school administrators completed a draft compliance plan, which called for consolidation and reorganization of the school district ("consolidation plan" or "plan"), which serves approximately 6,300 students. The consolidation plan involves, at the high school level, the closure of three of the seven district schools, re-zoning of the four remaining schools, creation of a visual and performing arts academy at Pine Prairie High, and creation of a medical science regents program at Ville Platte High. The plan's consolidation and re-zoning measures are intended to address facility and resource distribution problems, and broaden the curricular and extra-curricular opportunities available to the Parish's student population. The consolidation plan would result in only slight changes in the racial composition of the four remaining high schools, while diversity at the remaining schools would be enhanced through strategically located arts and regents programs. The consolidation plan is also designed to maintain the "cultural integrity" of the Parish's neighborhoods and the ability of most

5

students to attend a school within a reasonable distance from their homes.[1]

In January 2004, the DOJ and <u>Graham</u> plaintiffs approved the plan, and the Superintendent submitted the plan to the School Board. In less than two weeks, the School Board conducted six public meetings to introduce the consolidation plan to the community and invite public comment. Certain of the Appellants and members of NANS attended each meeting. In February, the School Board rejected the plan by a vote of seven-to-six. By order, the district court asked the United States (as well as the other parties) to submit another reorganization plan in a short period of

---

[1]

| Pre-Consolidation Plan | Grade | White | Black | Other | Total Students |
|---|---|---|---|---|---|
| Basile High School | 4-12 | 366 (81.32%) | 76 (16.8%) | 8 | 450 |
| Bayou Chicot High School | 4-12 | 386 (79.7%) | 93 (19.2%) | 5 | 484 |
| Chataignier High School | 4-12 | 177 (54%) | 151 (46%) | 0 | 328 |
| Mamou High | 9-12 | 185 (62.5%) | 110 (37.1%) | 1 | 296 |
| Pine Prairie High | 1-12 | 757 (98%) | 13 (1.7%) | 4 | 774 |
| Vidrine High School | 1-12 | 488 (80%) | 118 (19.3%) | 3 | 609 |
| Ville Platte High School | 7-12 | 184 (26.5%) | 503 (72.6%) | 5 | 692 |

| Post-Consolidation Plan | Grade | White | Black | Other | Total Students |
|---|---|---|---|---|---|
| Basile High School | 5-12 | 358 (81.74%) | 73 (16.67%) | 7 | 438 |
| Mamou High | 5-12 | 537 (61.94%) | 328 (37.83%) | 2 | 867 |
| Pine Prairie High | PK-4 9-12 | 650 (83.55%) | 123 (15.81%) | 5 | 778 |
| Ville Platte High School | 5-12 | 263 (29.09%) | 635 (70.24%) | 6 | 904 |

time.  Before that could occur, the School Board voted, eight-to-five, in favor of the proposed plan.  Two Board members, Bobby W. Deshotel and John D. Landreneau, changed their votes from "no" to "yes."  The School Board moved the district court for authorization to implement the plan in time for the 2004-05 school year.

At hearings conducted on March 15 and 16, 2004, the district court considered Appellants' motion to intervene.  On March 25, 2004, the district court authorized implementation of the consolidation plan,[2] and the next day denied Appellants' motion to intervene.  Appellants timely noticed their appeal.

### STANDARDS OF REVIEW AND JURISDICTION

We review de novo a district court's denial of a Rule 24(a)(2) (intervention as of right) motion, applying the same standards as the district court.  Saldano v. Roach, 363 F.3d 545, 550 (5th Cir. 2004).  We review a district court's denial of a Rule 24(b) (permissive intervention) motion for clear abuse of discretion.  United States v. Tex. E. Transmission Corp., 923 F.2d 410, 416 (5th Cir. 1991).

We have jurisdiction over the district court's denial of a motion to intervene as of right.  Our appellate jurisdiction over the district court's denial of permissive intervention Trans Chem.

---

[2]    The court later denied Appellants' motion to stay authorization of the plan pending appeal.

7

Ltd. v. China Nat'l Mach. Import and Export Corp., 332 F.3d 815, 821 (5th Cir. 2003)(citing Edwards v. City of Houston, 78 F.3d 983, 992 (5th cir. 1996)), is provisional. Id. at 821-22. If we affirm the district court, we must dismiss this case for want of jurisdiction because proper denial of a motion for permissive intervention does not constitute a final, appealable decision. Id.

**DISCUSSION**

## I.   Rule 24(a)(2) - Intervention as of Right

Pursuant to Rule 24(a)(2), a movant may intervene as of right when:  (1) the motion to intervene is timely; (2) the movant has an interest related to the transaction that forms the basis of the controversy in the case; (3) the disposition of the case has the potential to impair or impede the movant's ability to protect its interest; and (4) the existing parties do not adequately represent the movant's interest. Saldano, 363 F.3d at 551 (citing Doe v. Glickman, 256 F.3d 371, 375 (5th Cir. 2001)).  In the absence of any of these elements, intervention as of right must be denied.  United States v. Franklin Parish Sch. Bd., 47 F.3d 755, 758 (5th Cir. 1995).  This Circuit has held that an "interest" for Rule 24(a)(2) purposes must be "direct, substantial, [and] legally protectable . . . [,] one which the substantive law recognizes as belonging to or being owned by the applicant." Saldano, 363 F.3d at 551 (internal citations omitted).  As to the fourth prong, an

8

intervenor need only show that "the representation of his interest by the existing parties 'may be' inadequate." Id. at 553 (internal citations omitted).

We affirm the district court's denial of Appellants' motion to intervene as of right. Appellants have failed to present a legally cognizable interest that would be impeded or impaired by the consolidation plan.[3] According to their pleadings, Appellants seek intervention in order to:

> oppose[] [] the "consolidation" of schools, the mandatory assignment of students . . . because of their race, . . . and [] the use of tax monies for that purpose when . . . such action is unnecessary and may be . . . in violation of the equal protection, due process and other rights of applicants and their children.
>
> preserve the rights of parents to enroll their children in . . . the public school nearest their home and to preserve the identity and traditions of their local communities, neighborhoods, towns and villages - the heart of which is the public school.
>
> establish that the Evangeline Parish School system is in law and in fact unitary (or at the very least, partially unitary) and that the school system is entitled to be released from . . . court supervision . . . .

The district court correctly held that "[a]n interest in maintaining local community schools, without a showing that consolidation would hamper the avowed goal of eliminating the vestiges of past discrimination, fails to constitute a legally

---

[3] The parties do not appear to dispute the timeliness of Appellants' motion.

9

cognizable interest in a school desegregation case." See Graham, 223 F.R.D. at 432 (citing Perry, 567 F.2d at 279-80) (concerns about school location are "unrelated to desegregation and the establishment of a unitary school system" for purposes of intervention); see also Franklin Parish, 47 F.3d at 757, n.1 (noting that the parent group "sensibly abandoned its challenge to . . . the school board's determination of the number and location of schools in the parish"). Appellants' neighborhood school interest, while vital to them and their children personally, is not legally cognizable for Rule 24(a)(2) purposes. As in Perry, the instant Appellants do not challenge the plan as a deficient implementation of the standing desegregation orders and 2001 decree. Rather, they challenge it as an undesirable and unnecessary commitment of resources, given their view, discussed infra, that the school system is unitary. However, Appellants' policy views of a school board-approved plan are insufficient to establish interest. Perry, 567 F.2d at 279-80.

Next, Appellants have failed to show that the pending consolidation plan is an impediment to any of their other asserted interests. Contrary to Appellees' contention, Appellants do have a legally cognizable "interest in a desegregated school system," which necessarily encompasses their specifically asserted interest in unitary status. Perry, 567 F.2d at 279. Thus, although

10

Appellants do not have a right to intervene to challenge school board policy, they may have a basis to challenge the proposed plan that adversely affects achievement of unitary status.

Appellants contend that any further court-ordered plans are constitutionally impermissible because the district is in fact desegregated and should be declared unitary. Unlike the plaintiffs in Franklin Parish, supra, Appellants here assert present "injury" from court-ordered racial assignments of students pursuant to the reorganization plan. But their assertion overlooks the history of the case, which, until the close of the last century, exhibited the Parish's insouciance, at best, toward desegregation orders. See also Davis, 721 F.2d at 1441 (rejecting intervention where "the parents are not seeking to challenge deficiencies in the implementation of desegregation orders . . . . [but] oppose such implementation"). Moreover, the consolidation barely affects existing racial balances in the remaining schools, see n.1 supra, but seeks to encourage further voluntary desegregation with magnet programs. Appellants have not shown how attending a school (Ville Platte High) with a pre-consolidated population of 692 students and a 27%/73% ratio of white to black students is more constitutionally suspect than attending the post-consolidated Ville Platte High, with 904 students and a 29%/70% white to black racial makeup.

11

Because we have concluded that Appellants' interests are legally insufficient under Rule 24(a)(2), we need not dwell on whether the existing parties adequately represented Appellants' interests. Were we to do so, the record would be clouded by the district court's heavy-handed case management style. This aspect of the case is not controlled by Franklin Parish, where would-be intervenors offered "no evidence" that the school board was not representative of its constituency or had a motivation or interest different from that of appellants. 47 F.3d at 758. We do not denigrate the School Board. Appellants testified repeatedly, however, and without objection or substantial contradiction, that the Board members to whom they spoke (i.e., most of the members) voiced serious doubts about the reorganization plan but felt compelled to vote for it out of concern that failure to pass the plan would evoke, as the district judge warned, a much more radical plan from the DOJ.

It might not be unreasonable for laymen to believe that the Board Members' concern about further court proceedings led to a temptation to subservience before the court and perhaps even the forfeiture of their independent judgment of the best direction for the Parish's schools. The recent case history supports that concern. The court ordered the reorganization plan to be formulated by a select group of school administrators, while the

12

Board members were not allowed to participate. A strict gag order cloaked the plan in secrecy. Negotiations among the committee, the DOJ, and the Graham plaintiffs led to those groups' agreement on the plan before the Board was allowed to see it. The Board was put on the spot by being required to publicize and consider the plan, which took seven months to formulate, in less than one month. The district judge spoke personally to the two critical Board members between the time of their first negative votes and their later affirmative votes for the plan. At the intervention hearing, the judge questioned those two Board members at some length to explain the non-nefarious circumstances of the calls.[4] The tone and length of the court's opinion on this intervention order, and the candid recitation of the court's repeated meetings with the parties, suggest personal involvement in the case that approaches more of an administrative than a judicial role.

The test for adequacy of representation by existing parties is whether the party exhibits "adversity of interest, collusion, or non-feasance." Franklin Parish, 47 F.3d at 757. While the adequacy of the School Board's representation is presumed, id., the burden of showing inadequacy is not stringent. The record developed here could create a perception, whether

---

[4] The court found, in a finding supported by the testimony, that these Board members changed their votes for reasons not having anything to do with the telephone calls with the judge.

13

justified or not, that the Board forfeited its role to the district court.  As previously stated, we need not decide the adequacy question here.  We caution the court, however, to limit itself to traditional judicial decisionmaking rather than school administration, and to refrain from day-to-day management of its decrees.

## II.  <u>Rule 24(b) - Permissive Intervention</u>

Rule 24(b) provides for permissive intervention when: (1) the motion is timely; (2) a statute of the United States confers a conditional right to intervene; or (3) the movants' "claim or defense and the main action have a question of law or fact in common."  FED. R. CIV. P. 24(b); <u>Trans Chem. Ltd.</u> at 822 (quoting FED. R. CIV. P. 24(b)(2)).  The district court's Rule 24(b) determination is "wholly discretionary."  <u>Kneeland v. Nat'l Collegiate Athletic Ass'n</u>, 806 F.2d 1285, 1289 (5th Cir. 1987).  Thus, "even [where] there is common question of law or fact, or the requirements of 24(b) are otherwise satisfied," a district court may deny permissive intervention if such would "unduly delay or prejudice the adjudication of the rights of the original parties."  <u>Kneeland</u>, 806 F.2d at 1289.  Denials of permissive intervention are only subject to reversal if extraordinary circumstances so require.  <u>Trans Chem. Ltd.</u>, 332 F.3d at 822.  We see no extraordinary circumstances here, so the court's decision will be upheld.

14

## CONCLUSION

For the foregoing reasons we **AFFIRM** the district court, and **DISMISS** this case for want of jurisdiction.