**PENNAMCO, INC., a Delaware Corporation, Plaintiff,**

v.

**NARDO MANAGEMENT CO., INC., a Delaware Corporation, Defendant.**

Superior Court of Delaware.

Submitted May 28, 1981.
Decided July 3, 1981.

---

Alan W. Behringer, Wilmington (argued), of Richards, Layton & Finger, Wilmington, for Pennamco, Inc., plaintiff.

Lester J. Taufen, Wilmington (argued), of Connolly, Bove & Lodge, Wilmington, for JR & S Associates and John Julian Construction Co., intervenors.

O'HARA, Judge.

Pennamco, Inc. ("Pennamco") has instituted a scire facias sur mortgage foreclosure on a construction loan mortgage. During the pendency of motions to dismiss and for entry of judgment, petitioners, JR & S Associates ("JR & S") and John Julian Construction Co. ("Julian"), filed a joint motion to intervene under Superior Court Civil Rule 24(a)(2). JR & S, a subordinate mortgagee, alleges that violations by Pennamco of certain commitments in related mortgage documents invalidated a subordination agreement, making its lien prior to Pennamco's; Julian, a contractor, also alleges

violations of commitments in related documents which obligated Pennamco to make payments to Julian. After defendant Nardo Management, Inc. failed to file an Affidavit of Defense, Pennamco obtained judgment and directed the issuance of a Writ of Levari Facias for the purpose of executing on its judgment. Petitioners moved to stay execution and sale until their motion to intervene was resolved. By stipulation, the motion to intervene and the motion to stay have been consolidated.

The Court has concluded that the petition of JR & S to intervene should be granted but as to Julian, it should be denied.

 In deciding whether to permit intervention, all nonconclusory allegations supporting a motion to intervene are taken as true, absent sham or frivolity. *Central States, Etc. v. Old Sec. Life Ins.*, 7th Cir., 600 F.2d 671 (1979); See also 7A Wright & Miller, Federal Practice and Procedures: Civil § 1914 at 570 (1972). The Court, in determining the intervention issues, does not undertake to decide the ultimate validity of petitioners' alleged rights. *Weinberger v. Goldstein*, N.J.Ch., 99 N.J.Eq. 1, 132 A. 659 (1926), aff'd, 101 N.J.Eq. 310, 137 A. 920 (1927). Only the following issues are addressed: First, may a proposed claim arising out of a mortgage transaction be properly asserted in a mortgage foreclosure proceeding. Second, do each of the petitioners meet the intervention standards set forth in Rule 24(a)(2) which provides:

"Upon timely application anyone shall be permitted to intervene in an action: . . . . (2) when an applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

## JR & S

 Petitioner JR & S bases its motion to intervene on two separate allegations. First, since the proceedings of the Pennamco loan were not used to reduce the JR & S mortgage as agreed in the Subordination Agreement, the agreement itself is not binding. Second, the Subordination Agreement is also invalid because Pennamco failed to adequately supervise and monitor its loan advances in accordance with provisions outlined in the Construction Loan Agreement. There are four documents, all executed on July 27, 1979, pertinent here: 1) Purchase Money Mortgage, 2) Construction Mortgage, (3) Subordination Agreement, and 3) Construction Loan Agreement.

The question of whether a claim or counterclaim of this nature may be asserted in a mortgage foreclosure proceeding was discussed in *First Federal Sav. & L. Ass'n of Phila. v. Damnco Corp.*, Del.Super., 310 A.2d 880 (1973). In that case, the defendant, in a sci. fa. sur mortgage, asserted as a counterclaim that "plaintiff has failed to pay construction mortgage money owed defendant and agreed upon by mortgage documents, written and oral understandings." The Court made the assumption that a counterclaim of this type would be allowable in a sci. fa. sur mortgage action.[1] To support this assumption, the Court cited two cases, *Frantz v. Templeman Oil Corporation*, Del.Super., 134 A. 47 (1926)[2] and *Gordy v. Preform Building Components,*

---

1. The Court also ruled that this general statement alone would not meet the statutory test because it lacked specificity concerning accounts, conditions, and payment dates. This would seem to dispose of JR & S' first allegation.

2. In *Frantz*, the defendant claimed recoupment as a defense to plaintiff's action upon a note. The defendant alleged that he had advanced money to a subsidiary corporation of the defendant; this money was not devoted to the proper development of the corporation, but misappropriated and misapplied to the damage of the defendant. The Court stated,

"It is only necessary to say that such claim of recoupment could constitute no defense to plaintiff's claim because it does not appear that the matters stated in the affidavit of defense arose out of the same transaction as did the notes in suit."

*Inc.*, Del.Super., 310 A.2d 893 (1973).[3] In both of these cases, the Court refused to permit a counterclaim which arose from a different transaction. In *Gordy v. Preform Building Components, Inc.*, supra, the Court reasoned that to do so would infuse person-am litigation based on a foreign transaction, into an action which was essentially in rem.[4] By negative implication, a counterclaim based upon the *same* transaction which maintains the in rem character is allowable.

Clearly, JR & S' claim, which only affects lien priority status, maintains the in rem character of the proceedings. In addition, JR & S' interest is intimately related to the mortgage transaction itself, which is the subject matter of this action.[5] Since a counterclaim of this nature is assumed allowable, the argument favoring intervention is even more persuasive.

Pennamco also relies upon unrecorded releases executed by JR & S, but not recorded. The Court cannot speculate concerning possible future events. Indeed, it is somewhat mysterious why Pennamco has chosen not to record these releases. In addition, the substance of JR & S' claim attacks the very validity of these releases.

Examining the intervention standards set forth in Rule 24(a)(2), it is apparent that they have been met. An "interest relating to the property or transaction which is the subject matter of the action" has already been established. In addition, Pennamco's present position clearly demonstrates that JR & S' interests are not adequately represented and that disposition of the action may, as a practical matter, impair their ability to protect that interest.

JR & S' claim, having satisfied the standards set forth in Rule 24(a)(2), and being sufficiently related to the mortgage transaction, may be asserted in this foreclosure proceeding. Intervention of right is justified.

JULIAN

Petitioner Julian bases its motion to intervene on a provision in the Construction Loan Agreement, which provides that Pennamco directly pay Julian for certain land improvements. Julian alleges that Pennamco's failure to strictly comply with this provision justifies intervention of right. The issue is whether or not this obligation is part of the mortgage transaction. After examining the origin and nature of this

3. In *Gordy*, the issue was whether a proposed counterclaim, not arising out of the mortgage transaction, could be asserted in a mortgage foreclosure proceeding. In refusing to permit this type of counterclaim, the Court referred to other applications of the writ of scire facias as well as statutory provisions relating to the action of sci. fa. sur mortgage. Examination of the case law revealed a long standing rule against unrelated set-offs. *Burton v. Willin*, Del.Ct.Err. & App., 6 Houst. 522 (1883), *Deford v. Green*, Del.Super., 40 A. 1120 (1894), which was extended to permissive counterclaims in a mechanics lien action prior to the adoption of 25 *Del.C.* § 2712. *Stockman v. McKee*, Del.Super., 71 A.2d 875 (1950). These cases emphasized the singular nature of a sci. fa. action, and the fact that the counterclaim was based on a foreign transaction. Examination of the statutory provisions relating to the action of sci. fa. sur mortgage revealed no "pigeonhole" among the pleas traditionally allowed where a permissive counterclaim might be placed. The Court's discussion of the "plea in avoidance of the deed", however, is relevant here.

"... Such plea admits the allegations of the complaint but asserts matter which destroys the effect of the allegations and de-

feats the plaintiff's right. * * * * It appears that an allegation 'in avoidance' must relate to the subject matter of the complaint. * * "

4. This reasoning was adopted from *Stockman v. McKee*, Del.Supr., 71 A.2d 875 (1950). *Stockman* involved a permissive counterclaim filed in a scire facias sur mechanics lien action. The Court held that unrelated counterclaims could not be asserted in a mechanics lien action. The Court went on to state that counterclaims arising from the same transaction could be asserted, but not as in personam claims. Although the mechanics lien statute was subsequently amended to permit personal judgments, 25 *Del.C.* § 2712, this statement remains sound as to scire facias sur mortgage actions.

5. The mortgage transaction may encompass several documents. *Peterson v. Miller Rubber Co. of New York*, 8th Cir., 24 F.2d 59 (1928). For instance, Pennamco based its declaration of default on "conditions set forth in the respective mortgage, mortgage notes, and Construction Loan Agreement."

obligation, the Court concludes that it is not.

Julian's claim originated in a land sale agreement between Nardo Management, Inc. (purchaser) and JR & S. The subject matter of this agreement was Nardo Management, Inc.'s payment of the purchase price; neither Julian nor Pennamco were parties. The agreement listed three separate payment obligations in section 2. The second concerned Julian. It required Nardo Management, Inc. to pay $75,000.00 into escrow to finance certain land improvements to be performed by Julian. It was contemplated that Pennamco would act as an escrow agent. Pennamco became the escrow agent of this fund after executing a Construction Loan Agreement with Nardo Management, Inc. and JR & S. The relevant provision is entitled, Completion of Land Improvements.[6]

Julian's specific claim is that Pennamco, as escrow agent, failed to properly release funds. This claim is purely contractual; it bears no relation to the mortgage transaction. While it is true that both Julian and JR & S base their claims on the Construction Loan Agreement, the Court readily distinguishes Julian's contractual claim from JR & S' priority status claim. The Court concludes that Julian's interest is not sufficiently related to the mortgage transaction so as to make it a necessary party. Its claim is more properly the subject of a separate action.

MOTION TO STAY SALE OR EXECUTION

At this stage, it is in the interests of both JR & S and Pennamco to maximize any amount realized from a foreclosure sale. Since this may depend upon a timely sale, the stay of sale or execution is denied, conditioned upon the payment into Court of all proceeds realized. These proceeds will be held in escrow pending a disposition of contentions on the merits.

**6.** Construction Loan Agreement
"30. *Completion of Land Improvements* Seventy-five thousand dollars of land acquisition funds shall be disbursed at closing *to* Pen-

For the reasons herein stated, the Court concludes that the joint motion to intervene should be granted as to JR & S and denied as to Julian. The motion to stay sale or execution is denied, subject to the escrow of foreclosure funds as indicated herein.

IT IS SO ORDERED.

namco, Inc. . . . and shall be paid directly *by* lender to John Julian Construction Co. for land improvements." (Emphasis added).