Elsie B. **WOLHAR** and Robert Wolhar, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION**, a Delaware Corporation, and **Frank W. Diver, Inc.**, a Delaware Corporation, t/a Diver Chevrolet, Defendants.

No. 93C–04–024 SCD.

Superior Court of Delaware, New Castle County.

Date Submitted: Aug. 28, 1997.

Date Decided: Oct. 16, 1997.

Lisa C. McLaughlin, Robert S. Goldman, of Phillips, Goldman & Spence, P.A., Wilmington, for plaintiffs Elsie B. and Robert Wolhar.

Somers S. Price, Jr. of Potter, Anderson & Corroon, Wilmington, for defendants General Motors Corporation and Frank W. Diver, Inc.

Sidney Balick, of Sidney Balick & Associates, Wilmington, for third-party intervenors Kevin Gleason, et al., Darlene Norris, Jane Novis, and Debra Buongiovanni.

Carl Schnee, Samuel D. Brickley, II, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for third-party intervenors Medina B. Woody and Lois Aguilar.

## MEMORANDUM OPINION

### Introduction

DEL PESCO, Judge.

The principal matter before the Court concerns motions by six non-parties ("the Intervenors") to intervene for the limited purpose of modifying a protective order entered by

the Court relating to certain confidential documents.[1] In particular, the Intervenors wish to review and obtain copies of the "Litigation Study," a 3300–page collection of documents gathered by the legal staff at General Motors Corporation ("GM") in the early 1990s for the purpose of studying litigation problems arising from seat back failures in a broad range of GM vehicles.[2]

At the heart of the Intervenors' application is a dispute over the standard by which the Court may modify a standing protective order in order to permit third-party access to protected materials. As elaborated in the discussion below, the Court adopts a balancing test that applies the same factors considered in determining whether to grant such an order in the first instance with one additional factor: the parties' reliance upon the protective order. In brief, the Court must balance the interests of promoting a liberal discovery policy against any prejudice that a party may suffer as a result of modifying a protective order, including the original parties' reliance on the order.

### Procedural Background

The Wolhars' products liability claim against GM has been written about extensively in previous decisions. The portion of the Wolhars' claim that is relevant to this discussion relates to an alleged seat back failure. Although the Intervenors are non-parties to the suit, they are involved in pending litigation against GM in other jurisdictions.[3] Underlying their actions is the claim that they suffered serious injuries when the front seat of the GM vehicle that they occupied collapsed as a result of a rear-end collision.[4] The Intervenors allege that GM negligently designed the seat system in their vehicles in a manner that would cause injury to an occupant in foreseeable rear-end collisions. Pursuant to Superior Court Civil Rules 26(c) and 5(g), they seek to modify the protective order entered in *Wolhar* in order to gain access to the Litigation Study which they assert contains discoverable material relevant to their claims against GM.

### Permissive Intervention

■ Superior Court Civil Rule 24(b) states, in pertinent part:

> [U]pon timely application, *anyone* may be permitted to intervene in an action: . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the existing parties.[5]

Nonconclusory allegations supporting a motion to intervene are taken as true absent sham or frivolity.[6] In the instant matter, the Intervenors' allegations are supported by affidavit and are essentially identical to the Wolhars' claims. The Intervenors assert that the facts underlying their claims against

---

**1.** *Wolhar v. General Motors Corp.*, Del.Super., C.A. No. 93C–04–024, Del Pesco, J. (Dec. 14, 1993) (ORDER) (confidentiality agreement and protective order).

**2.** The Litigation Study, which has become something of a plaintiffs' talisman in seat back litigation against GM, has also been variously referred to as the "Seat Back Study," the "Seat Safety Analysis," or the *"Hibbard* documents." *See Hibbard v. General Motors Corp.*, Cal.Super., C.A. No. 4925319, Creede, J. (Jan. 10, 1996).

**3.** *See Kevin Gleason, et al. v. General Motors Corp.*, Ky.Cir.Ct., C.A. No. 97–C1–00159 (Breathitt County, Ky.); *Darlene Norris v. General Motors Corp.*, Cal.Super., C.A. No. PC010345 (Los Angeles County, Cal.); *Debra Buongiovanni v. General Motors Corp.*, Pa.Ct.Comm. Pleas, C.A. No. 91–01676142 (Bucks County, Pa.); *Jane Novis v. General Motors Corp.*, Mich.Super., C.A. No. 95–511698–NI (Oakland County, Mich.); *Medina*

*Woody v. General Motors Corp.*, Ga.St.Ct., C.A. No. 96VS0115085A (Fulton County, Ga.); *Lois Aguilar v. General Motors Corp.*, Cal.Super., C.A. No. RCV21861 (San Bernadino County, Cal.).

**4.** The vehicles driven or occupied by the Intervenors were all of different makes than the 1987 Chevrolet S–10 Blazer driven by Mrs. Wolhar. These vehicles include: 1994 Buick Skylark (Gleason); 1991 Pontiac Sunbird (Norris); 1984 Chevrolet Chevette (Buongiovanni); 1992 Pontiac GrandAm (Novis); 1994 Saturn (Aguilar); 1988 Chevrolet Camero (Woody). The Intervenors allege, however, that the seat systems of their vehicles share similar design characteristics.

**5.** Super.Ct.Civ.R. 24(c) (emphasis added).

**6.** *Pennamco, Inc. v. Nardo Management Co.*, Del.Super., 435 A.2d 726, 728 (1981).

GM involve rear-end collisions that caused front seat failure or collapse with the result that the occupant of the seat suffered serious injury. They further allege that GM negligently designed the seat systems in their vehicles and that these seat systems are similar in design and function.

■ Although there is a question of whether the precise engineering specifications of the seat systems in the claimants' cars are identical, the Court notes that the Study involved the review of a broad range of GM vehicles and not any one particular make of car or seat system. Because the Intervenors propose to limit the scope of their intervention to discovery of Litigation Study documents, the Court finds that the Intervenors have established a question of law or fact in common with the Wolhars' claim against GM. With respect to the timeliness of the Intervenors' application, the Court notes that their claims are currently in litigation, roughly contemporaneous with the Wolhars' suit, and that intervention at this point would not unduly delay the adjudication of the *Wolhar* proceedings. The critical issue is whether intervention for the Intervenors' declared purpose will substantially prejudice GM's position in *Wolhar*.

### Third–Party Access to Discoverable Material

■ As a general proposition, the goal of sharing or using discovery materials developed in one case with the litigants of another is appropriate under our rules of civil procedure which "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." [7] The great weight of authority in other jurisdictions holds that such sharing is not only theoretically sound but also justified as an efficient use of the resources of the courts and the parties. [8] The Court of Appeals for the Seventh Circuit's opinion in *American Telephone and Telegraph Co. v. Grady* is instructive:

> [P]re-trial discovery must take place in the [sic] public unless compelling reasons exist for denying the public access to the proceedings.... This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of the courts and litigants and speeds up what may otherwise be a lengthy process. Particularly in litigation of this magnitude [involving many thousands of documents], we ... are impressed with the wastefulness of requiring ... duplicate discovery already made. [9]

Sharing of discovery materials is particularly appropriate where multiple individual plaintiffs assert essentially the same alleged wrongs against a national manufacturer of a consumer product. [10] Unless it can be shown

7. Super.Ct.Civ.R. 1; *Novak v. Tigani*, Del.Super., 110 A.2d 298 (1954).

8. *Pansy v. Borough of Stroudsburg*, 3d Cir., 23 F.3d 772, 789–90 (1994); *United Nuclear Corp.*, 10th Cir., 905 F.2d 1424, 1427–28, cert. denied, 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *Public Citizen v. Liggett Group, Inc.*, 1st Cir., 858 F.2d 775, 787, cert. denied, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989); *Meyer Goldberg, Inc. of Lorain v. Fisher Foods*, 6th Cir., 823 F.2d 159, 163 (1987); *Wilk v. American Medical Assoc.*, 7th Cir., 635 F.2d 1295, 1299 (1980); *In re Beef Industry Antitrust Litigation*, 5th Cir., 589 F.2d 786, 789 (1979); *Olympic Refining Co. v. Carter*, 9th Cir., 332 F.2d 260, 264–65 (1964); *Zapata v. IBP, Inc.*, D.Kan., 160 F.R.D. 625, 628 (1995); *Deford v. Schmid Products Co.*, D.Md., 120 F.R.D. 648, 654–55 (1987); *Jochims v. Isuzu Motors, Ltd.*, S.D.Ia., 148 F.R.D. 624, 630–31 (1993); *Patterson v. Ford Motor Co.*, W.D.Tex., 85 F.R.D. 152, 154 (1980); *Raymond Handling Concepts v. Superior Court*, Cal.App., 39 Cal.App.4th 584, 45 Cal.Rptr.2d 885, 886–87 (1995); *Garcia v. Peeples*, Tex.Supr., 734 S.W.2d 343, 347 (1987). See also REPORT OF FEDERAL COURTS STUDY COMMITTEE 102 (1990).

9. *American Telephone and Telegraph Co. v. Grady*, 7th Cir., 594 F.2d 594, 596–97, cert. denied, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). For purposes of the Intervenors' motion, it should be noted that the goal of sharing information among other litigants is separate from any First Amendment argument that the public in general has a right to information produced during the discovery process. See *Seattle Times Co. v. Rhinehart*, U.S.Supr., 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

10. *Deford v. Schmid Products Co.*, D.Md., 120 F.R.D. 648, 654 (1987); *Ward v. Ford Motor Co.*, D.Colo., 93 F.R.D. 579, 580 (1982); *Williams v. Johnson and Johnson*, S.D.N.Y., 50 F.R.D. 31, 32 (1970).

that the intervening party is exploiting the instant litigation solely to evade another jurisdiction's rules of discovery or to assist litigation in an international forum, the courts will allow use of the discovered information in other jurisdictions.[11] In the instant matter, there is no evidence that the respective jurisdictional rules of discovery governing the Intervenors' litigation would be violated or that the confidentiality of the discovered materials would be breached.

### Modification of a Protective Order

Delaware law provides that discoverable materials or depositions may, for good cause shown, be protected from public disclosure for, among other reasons, that they include "a trade secret or other confidential research, development, or commercial information not to be disclosed or to be disclosed only in a designated way."[12] Pursuant to Superior Court Rules 26(c) and 5(g), GM and the Wolhars entered into a confidentiality agreement and protective order which provides that any party may designate any document produced in connection with the litigation as "confidential" or "proprietary" by marking the document as such.[13] On that and other occasions and in response to the Intervenors' motions, GM has asserted by affidavit the confidential and proprietary nature of discovery materials so identified. This protective order has been in effect for over four years and would cover Litigation Study documents sought by the Intervenors.

In order to petition the Court for modification of a protective order, Superior Court Civil Rule 5(g) states, in pertinent part:

[A]ny person who objects to the continued restriction on public access to any Court Record placed under seal ... shall give written notice of his or her objection to the person who designated the Court Record for filing under seal and shall file written notice with the Court. To the extent that any person seeks to continue the restriction on public access to such Court Record, he or she shall serve and file an application within 7 days after receipt of such written notice setting forth the grounds for such continued restriction and requesting a determination whether good cause exists therefor.[14]

In accordance with Rule 5(g)(4) and pursuant to Rule 26(c), the Intervenors filed parallel motions to intervene for the limited purpose of modifying the Court's 1993 Protective Order in order to gain access to Litigation Study documents. GM responded accordingly, setting forth grounds for continuing the order unmodified.

 It is widely recognized in federal and other state jurisdictions that the procedurally correct course for third-party challenges to a protective order is intervention.[15] Construction of federal rules is greatly persuasive in the construction of Superior Court Civil Rules.[16] As in the creation of a protec-

---

**11.** *United Nuclear,* 905 F.2d at 1428 ("Questions of the discoverability in the collateral litigation of the materials discovered in this litigation are, of course, for the collateral courts to decide" (citations omitted)); *Wilk,* 635 F.2d at 1300; REPORT OF FEDERAL COURTS STUDY COMMITTEE 102 (1990). *See also In re Application of Asta Medica, S.A.,* 1st Cir., 981 F.2d 1, 5–6 (1992); *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago,* 11th Cir., 848 F.2d 1151, 1156, *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989); *cf. In re Application of Gianoli,* 2d Cir., 3 F.3d 54, 60, cert. denied, 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 376 (1993) (implied requirement of discoverability in foreign forums should be considered within the district court's exercise of discretion).

**12.** Super.Ct.Civ.R. 26(c); *see also* Super.Ct.Civ.R. 5(g)(2) ("Court Records or portions thereof shall not be placed under seal unless and except to the extent that the person seeking the

sealing thereof shall have first obtained, for good cause shown, an order of this Court specifying those Court Records, categories of Court Records, or portions thereof which shall be placed under seal").

**13.** *Wolhar,* Del Pesco, J. (Dec. 14, 1993) (Protective Order at ¶ 1).

**14.** Super.Ct.Civ.R. 5(g)(4).

**15.** *Pansy,* 23 F.3d at 790; *United Nuclear,* 905 F.2d at 1427; *Public Citizen,* 858 F.2d at 783–84; *Meyer Goldberg,* 823 F.2d at 162; *In re Beef Indus.,* 589 F.2d at 789; *see also* Note, *Nonparty Access to Discovery Materials in Federal Courts,* 94 HARV.L.REV. 1085, 1092 (1981).

**16.** *Scott v. Kay,* Del.Supr. 227 A.2d 572, *aff'd,* Del.Supr., 233 A.2d 52 (1967); *Canaday v. Superior Court,* Del.Supr., 119 A.2d 347 (1955); *Allder v. Hudson,* Del.Super., 106 A.2d 769 (1954), *over-*

tive order, modification is within the sound discretion of the court.[17] The issue of the standard of review for a motion to modify a standing protective order, however, has not yet been decided in this jurisdiction.

■ In other jurisdictions, there is a split of authority on the weight to be accorded the original parties' reliance upon the order. The Court of Appeals for the Second Circuit follows a stringent standard which allows modification only in extraordinary circumstances or when a compelling need can be shown.[18] The Court notes, however, that this is a minority position. Most other federal circuit courts have rejected this standard and have held that a more lenient test for modification is appropriate.[19] In *Pansy v. Borough of Stroudsburg,* the Third Circuit held:

> "[T]he appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors the court should consider ... is the reliance by the original parties on the confidentiality order. The parties' reliance on an order, however, should not be outcome determinative, and should be only one factor that a court considers...." [20]

In circumstances where third parties seek modification of a protective order in order to avoid duplicative discovery, courts have further held that such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.[21] Although an important purpose of granting a protective order is the greater efficiency accorded the discovery process by the assurance it gives the parties that sensitive materials will not be improvidently disclosed to the public, there is a countervailing efficiency consideration when a collateral litigant seeks modification of a protective order to avoid duplicative discovery.[22] In view of the foregoing authority and the nature of the competing interests surrounding a motion to modify a protective order, the Court adopts the balancing test as articulated by the Third Circuit in *Pansy.*

■ In the instant matter, the Court must balance the Intervenors' proposed modification of the protective order against GM's reliance upon the order to determine whether such a modification would prejudice substantial rights of GM. As an initial matter, the Court agrees with GM's assertion that the Litigation Study contains sensitive commercial and trade information that should, in an appropriately controlled manner, be protected from general public disclosure.[23] Because the Intervenors are collateral litigants with their own suits against GM, and thus in a position to make discovery of the same information in their own jurisdictions, they are likewise in a position to review and ob-

ruled on other grounds, *Whetsel v. Gosnell,* Del. Supr., 181 A.2d 91 (1962).

17. Super.Ct.Civ.R. 26(c) ("the Court ... may make any order which justice requires to protect any party or person from annoyance, embarrassment, oppression, or undue burden and expense, including one or more of the following: ... (6) that a deposition after being sealed be opened only by order of the Court; (7) that a trade secret or other confidential research, development, or any commercial information not be disclosed or be disclosed only in a designated way;") (emphasis added).

18. *See, e.g., Martindell v. International Telephone and Telegraph Corp.,* 2d Cir., 594 F.2d 291, 296 (1979); *accord City of Hartford v. Chase,* 2d Cir., 942 F.2d 130, 135–36 (1991).

19. *Pansy,* 23 F.3d at 789–90; *Beckman Indus., Inc. v. International Ins. Co.,* 9th Cir., 966 F.2d 470, 475 (1992); *United Nuclear,* 905 F.2d at 1428 n. 1; *Public Citizen,* 858 F.2d at 790–91; *Meyer Goldberg,* 823 F.2d at 163–64; *Wilk,* 635 F.2d at 1299–1300.

20. 23 F.3d at 790.

21. *United Nuclear,* 905 F.2d at 1428; *Meyer Goldberg,* 823 F.2d at 163; *Wilk,* 635 F.2d at 1299; *Jochims,* 148 F.R.D..at 630; *Patterson,* 85 F.R.D. at 154.

22. *United Nuclear,* 905 F.2d at 1427–28; *Wilk,* 635 F.2d at 1299.

23. Indeed, the Litigation Study has already been reviewed *in camera* by the Court twice to determine whether attorney work product privileges apply to them. *See Wolhar v. General Motors Corp.,* 712 A.2d 457 (Del.Supr.1997) (ORDER regarding Plaintiffs' exceptions to the SDM's rulings on GM's motion for a protective order as to the Litigation Study documents).

tain such material under the same or similar conditions as the Wolhars.

Given that the Intervenors seek only to discover Litigation Study documents and that they have stipulated in their motions that they are willing to adopt the GM confidentiality agreement as a condition to receiving them, there appears to be no substantial prejudice to GM merely because it cannot force the Intervenors to repeat the same discovery process with all of its attendant expenses and delays. Any prejudice to GM is diminished, if not eliminated by the fact that documents produced to the Intervenors from the Litigation Study would not be made public and would be subject to the confidentiality conditions articulated in the original protective order. Documents in the Litigation Study that the Court has found protected under the attorney work product doctrine, however, are not discoverable by the Wolhars and therefore would be unavailable to the Intervenors.

### Conclusion

Having met the requirements for intervention under Superior Court Rule 24(b), the moving parties are permitted to intervene for the limited purpose of reviewing and obtaining documents or compilations of information extracted from the Litigation Study as produced by GM to the Wolhars pursuant to this Court's Order of October 2, 1997, which the Court hereby incorporates by reference.[24] To preserve GM's interest in protecting confidential or proprietary information contained in the Litigation Study, the intervening parties will be subject to the conditions of the protective order agreed to by GM and the Wolhars, which the Court hereby incorporates by reference.[25] GM and the intervening parties shall submit to the Court a Form of Order reflecting the above arrangements.

**IT IS SO ORDERED.**

---

**24.** *See Wolhar,* Del Pesco, J. (Oct. 2, 1997) (ORDER regarding Plaintiffs' exceptions to the SDM's rulings on GM's motion for a protective order as to the Litigation Study documents).

**25.** *Wolhar,* Del Pesco, J. (Dec. 14, 1993) (ORDER).