# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TIMOTHY J. HARRIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0736-JTL |
| | ) | |
| HARRIS FRC CORPORATION, a New Jersey Corporation, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Date Submitted: December 31, 2020
Date Decided: January 7, 2021

Joel Friedlander, Christopher M. Foulds, Christopher Quinn, FRIEDLANDER & GORRIS, P.A., Wilmington, Delaware; *Attorneys for Petitioner.*

Maura L. Burke, Courtney A. Emerson, Katelyn M. Crawford, FOX ROTHSCHILD LLP, Wilmington, Delaware; Emily A. Kaller, GREENBAUM, ROWE, SMITH & DAVIS LLP, Woodbridge, New Jersey; *Attorneys for Respondent.*

**LASTER, V.C.**

The petitioner in this appraisal proceeding, Timothy Harris, moved to modify the confidentiality order entered in this action so that he can assert plenary claims, including claims for breach of fiduciary duty. Harris maintains that discovery revealed evidence of misconduct by the controlling stockholder of respondent Harris FRC Corporation (the "Company") and three individuals who work with her.

The confidentiality order states that discovery material "shall be used solely for purposes of this Litigation and shall not be used for any other purpose, including, without limitation, any business or commercial purpose, or any other litigation or proceeding." Dkt. 11 ¶ 9 (the "Use Restriction"). The confidentiality order defines "this Litigation" as the appraisal proceeding. *Id.* at 1. Accordingly, absent modification, the Use Restriction prevents Harris from using discovery material subject to the confidentiality order to pursue other claims.

"[A] trial court retains the jurisdiction and authority to enforce, modify, or terminate any confidentiality order it has entered." *Hallett v. Carnet Hldg. Corp.*, 809 A.2d 1159, 1162 (Del. 2002); *accord Miles Inc. v. Cookson Am., Inc.*, 1993 WL 547186, at *5 (Del. Ch. Dec. 30, 1993) ("It is clear, however, that a trial court has discretion to modify a protective order."). "As in the creation of a protective order, modification is within the sound discretion of the court." *Wolhar v. Gen. Motors Corp.*, 712 A.2d 464, 468–69 (Del. Super. 1997), *aff'd*, 734 A.2d 161 (Del. 1999) (ORDER).

In *Wolhar*, the Delaware Superior Court adopted the "lenient test for modification" described by the United States Court of Appeals for the Third Circuit:

1

> [T]he appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors the court should consider . . . is the reliance by the original parties on the confidentiality order. The parties' reliance on an order, however, should not be outcome determinative, and should be only one factor that a court considers . . . .

712 A.2d at 469 (alteration and omissions in original) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994)). The movants in *Wolhar* were non-parties who sought to modify a confidentiality order to obtain documents generated in discovery in Delaware for use in connection with "essentially identical" claims they had brought against the defendants in other jurisdictions. *Id.* at 466. The court granted the modification, reasoning that "[a]ny prejudice . . . is diminished, if not eliminated[,] by the fact that documents produced . . . would not be made public and would be subject to the confidentiality conditions articulated in the original protective order." *Id.* at 468–69.

Under Court of Chancery Rule 5.1, a party "seeking to obtain or maintain Confidential Treatment always bears the burden of establishing good cause for Confidential Treatment." Under *Wolhar*, the operative standard for modifying a confidentiality order is the same as the test for entering one: good cause shown, taking into account multiple factors including the possibility of reliance on the existing order.

The Delaware Supreme Court has recognized that the appraisal remedy can enable a petitioner to uncover fraud and wrongdoing that otherwise might not be identified, because "only shareholders pursuing discovery during an appraisal proceeding are likely to acquire the relevant information needed to pursue a fraud action if such information exists." *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1189 (Del. 1988); *see also*

2

*Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983) ("The appraisal remedy . . . may not be adequate in certain cases, particularly where fraud, misrepresentation, self-dealing, deliberate waste of corporate assets, or gross and palpable overreaching are involved."). In part because the high court viewed appraisal actions as serving this important public policy, the justices held that a stockholder who had demanded appraisal and pursued an appraisal proceeding could subsequently file and simultaneously litigate a breach of fiduciary action based on information uncovered in the appraisal proceeding. *Cede*, 542 A.2d at 1188–89. The high court explained that "to bar those seeking appraisal from asserting a later-discovered fraud claim may effectively immunize a controlling shareholder from answering to a fraud claim." *Id.* at 1189. The Delaware Supreme Court concluded that an appraisal petitioner "should be permitted to exercise its appraisal rights while seeking rescissory damages in a consolidated action, subject to the limitation of a single recovery judgment." *Id.* at 1192.

Harris has carried his burden to justify modifying the confidentiality order. Harris originally sought to use the tools at hand to explore possible wrongdoing at the Company. Eleven days after he served a demand under Section 220 to obtain books and records, the Company reincorporated in New Jersey through a merger. The Company then rejected Harris's demand. Pet. ¶¶ 35–37; Dkt. 14 ¶ 8. Because the merger gave rise to appraisal rights, Harris sought appraisal of one share of stock while "reserv[ing] all rights to assert additional claims in due course." Pet. ¶ 3.

Under *Cede*, Harris had the right to seek appraisal and to use the information he obtained in discovery to assert additional claims. Good cause therefore exists to modify the

3

confidentiality order to broaden the definition of "Litigation" to include other claims that Harris may bring against the Company. Nor is there any reason why the modification should be a one-way street. To the extent the Company has claims against Harris, it can use discovery material obtained from Harris to assert those claims. Both sides know about the discovery material. They can use it in their mutual litigation efforts against each other.

Modifying the confidentiality order in this fashion will not threaten to expose the parties' confidential information to public view. Harris has not asked the court to vacate any of the Company's confidentiality designations, and the court is not taking that step. Harris must continue to comply with the strictures of the confidentiality order, meaning he must seek leave to file his claims confidentially and otherwise preserve the confidentiality of the information. The same is true for the Company. This ruling only modifies the Use Restriction.

The Company responds that it will suffer prejudice because Harris will be able to assert additional claims. A confidentiality order is not a covenant not to sue. A confidentiality order protects information when "the public interest in access to Court proceedings is outweighed by the harm that public disclosure of sensitive, non-public information would cause." Ch. Ct. R. 5.1(b)(2). That interest is preserved by keeping the confidentiality order in place, subject to modifying the Use Restriction to broaden the definition of Litigation. *See Wolhar*, 712 A.2d at 468–69.

To support its argument that the confidentiality order should not be modified, the Company relies on *LVI Group Investments, LLC v. NCM Group Holdings, LLC*, 2017 WL 5989047 (Del. Ch. Dec. 4, 2017). There, the parties to a consolidation asserted fraud claims

4

against each other. After obtaining discovery under a confidentiality order, the plaintiff sought to modify the order so it could assert fraud claims against individuals in Illinois and New York. *Id.* at *1. This court denied the request, crediting on the facts presented that the defendant had "tailored [its] approach to discovery in reliance on the protective order's assurance that [it] would not have to face the burden and expense of litigation outside of Delaware." *Id.* at *2 (internal quotation marks omitted). The court found that the modification would result in "significant prejudice" if the court "declined to enforce an agreed-upon protective order that ensured neither party would have to bear the cost of litigating related claims outside of Delaware." *Id.*

In this case, there is no similarly credible claim of prejudice. The Company was on notice that discovery in the appraisal proceeding could be used at a later date to assert plenary claims. *Cede* stands for that proposition, and this court has addressed a series of plenary cases that grew out of appraisal claims.[1] Harris also reserved his right to assert

---

[1] *See, e.g.*, *Virtus Cap. L.P. v. Eastman Chem.*, 2015 WL 580553, at *10 (Del. Ch. Feb. 11, 2015) (denying motion to dismiss in plenary action, noting that the stockholder plaintiff had filed an appraisal proceeding and that "[i]n the appraisal action, [the plaintiff] obtained the discovery that forms the basis for the Complaint's allegations"); *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 16 (Del. Ch. 2014) (addressing plenary action against controlling stockholder filed two months after determination of fair value in appraisal action where complaint relied on discovery in appraisal action, including testimony); *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 34 (Del. Ch. Aug. 16, 2013) (noting that plaintiff filed a plenary lawsuit "based on discovery from the appraisal action"). *See generally In re Columbia Pipeline Gp., Inc.*, 2018 WL 4182207, at *3–4 (Del. Ch. Aug. 30, 2018) (rejecting argument that Delaware case law suggests an intent to prevent information uncovered in an appraisal proceeding from being used in plenary litigation).

other claims when demanding appraisal. The Use Restriction does not create any contrary expectation; it is a standard term designed to ensure that the parties only use discoverable information for purposes of litigation. It is not a constructive covenant not to sue, nor is it a constructive forum selection clause. In any event, the latter concern does not exist in this case, because Harris has indicated that he intends to file his plenary claims in this court.[2]

Finally, Harris seeks guidance on whether he should assert his plenary claims by amending his petition in this action or whether he should file a separate action, then moving for consolidation. Dkt. 143 ¶ 6. Delaware authority conflicts on this subject,[3] but the

---

[2] The Company cites two federal cases that it claims should lead to the denial of Harris's motion. Neither case is on point. The Company claims that the first federal case supports the proposition that "resolution of any dispute [involving a] protective order should be resolved under contract principles." Dkt. 115 ¶ 6 (quoting *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 537 (1st Cir. 1993) (Keeton, J., dissenting) (alteration in original)). *Poliquin* involved a post-settlement dispute over whether the plaintiffs' attorneys could send materials obtained in discovery to other potential plaintiffs. *Poliquin*, 989 F.2d at 530 ("[P]laintiffs' counsel suggested that material offered in evidence would be freed from further restriction, so he could send such material to other plaintiffs who had similar cases."); *see also id.* at 531 ("There is no hint that the [plaintiffs] themselves have any practical interest in the outcome of the appeal, but as they are formally subject to protective orders entered in their case, we see no lack of standing to seek appellate review."). The Company relies on language from the *dissent*, not the holding, and the language in question addressed whether the order should be interpreted using contract principles given that the underlying dispute was moot. That issue is not relevant here. The Company also cites a second federal case for the proposition that "courts are generally reluctant to disturb the contractual terms negotiated by sophisticated parties." Dkt. 115 ¶ 6 (quoting *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 372 (D.D.C. 2008) (alteration omitted)). That case did not involve a dispute over a confidentiality order. The quotation addressed the plaintiff's claim that the terms of a loan agreement were unconscionable. *Id.*

[3] *Compare Cede*, 542 A.2d at 1189–90 (Del. 1988) ("If shareholders are permitted to litigate fraud claims in appraisal proceedings, shareholders not seeking appraisal would be required to litigate 'entire fairness' claims identical to the claims litigated by shareholders with perfected appraisal rights but through separate actions. This would create

outcome will be the same in any event. Harris accordingly has leave to amend his petition in this case to assert plenary claims in addition to his appraisal claim. *See Nagy*, 770 A.2d at 58.

---

a substantial risk of inconsistent judgments and raise issues of collateral estoppel."), *with Nagy v. Bistricer*, 770 A.2d 43, 58 (Del. Ch. 2000) (declining to read *Cede* as stating "an inflexible rule that a complaint may never raise both an appraisal and a breach of fiduciary [duty] claim" because "[i]n this case, there is no distinction in identity between those plaintiffs seeking appraisal and those raising equitable claims" and "there is no chance that the case will proceed without necessary parties before the court or that the case will subject defendants to improper forms of liability").