**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

March 15, 2023

Michael J. Barry, Esquire
Grant & Eisenhofer P.A.
123 Justison Street, 7th Floor
Wilmington, DE  19801

Thomas Curry, Esquire
Saxena White P.A.
824 North Market Street, Suite 1003
Wilmington, DE  19801

Gregory V. Varallo, Esquire
Bernstein Litowitz Berger & Grossman LLP
500 Delaware Avenue, Suite 901
Wilmington, DE  19801

Raymond J. DiCamillo, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

***Via Electronic Mail:***
Frank Iacono
6 Donald Court West
Blue Point, NY  11715
fiacono@fiacono.com

RE: ***In re AMC Entertainment Holdings, Inc. Stockholder Litigation,***
Consol. Civil Action No. 2023-0215-MTZ

Dear Counsel and Mr. Iacono:

I write to resolve Mr. Iacono's motion to intervene.[1]  As you are aware, the plaintiffs in this matter sought to enjoin voting by holders of AMC Preferred Equity Units ("APEs") at a March 14, 2023, special meeting (the "Special Meeting") of AMC Entertainment Holdings, Inc. ("AMC" or the "Company").[2]  At the Special Meeting, AMC common and preferred stockholders were to consider

---

[1] Citations in the form of "2023-0216, D.I. —" refer to docket items in *Usbaldo Munoz, et al. v. Adam M. Aron, et al.*, C.A. No. 2023-0216-MTZ (Del. Ch.).  Citations in the form of "2023-0215, D.I. —" refer to docket items in *In re AMC Entertainment Holdings, Inc. Stockholder Litigation*, C.A. No. 2023-0215-MTZ (Del. Ch.), formerly *Allegheny County Employees' Retirement System v. AMC Entertainment Holdings, Inc., et al.*, C.A. No 2023-0215-MTZ (Del. Ch.).

[2] 2023-0216, D.I. 1; 2023-0215, D.I. 20 ¶ 7.

proposals that would effectively convert all APEs into common stock. The plaintiffs alleged the proposals would be approved, and dispute the validity of that vote. On February 27, the plaintiffs and defendant AMC directors stipulated and agreed that AMC would hold the Special Meeting and tabulate votes, but that the directors would not effectuate the conversion as a result of any votes of, or adjournment of, the Special Meeting pending a ruling by the Court on the plaintiffs' motion for a preliminary injunction (the "Stipulation").[3] The Court accepted the Stipulation by order that same day.[4] The parties are preparing for a preliminary injunction hearing to be held on April 27.

On March 1, Frank Iacono filed an "Emergency Motion to Intervene" (the "Motion") asserting that the Stipulation delaying any conversion nullified the protective effect of put options he purchased that expire April 21.[5] Mr. Iacono has held APEs since October 2022. In response to the Company's December 22, 2022, disclosure that it planned to hold a vote on converting APEs into common stock, Mr. Iacono purchased more APEs in a transaction he describes as "large (for me)."[6] As he describes his strategy:

---

[3] 2023-0215, D.I. 9; 2023-0216, D.I. 9.

[4] 2023-0215, D.I. 10; 2023-0216, D.I. 10.

[5] 2023-0215, D.I. 15; 2023-0216, D.I. 21. The Motion was docketed in both actions. This letter cites them together as "Mot."

[6] Mot. at 2.

> Reasonably expecting the conversion to be completed by late March or early April, the latest, contemporaneously with these APE purchases in January, I purchased put options on AMC with expiration date April 21, 2023. The size of the AMC put position acquired in January, as measured by number of underlying shares, closely matched the number of additional APE shares I purchased in January. With APE expected to convert into common shares of AMC, the put options were purchased to protect the value of my stock investment against a possible decline in value shortly after the conversion, which, according to the December 22 8-K, was to take place in March 2023, early April the absolute latest. There were (and are) no traded options based solely on the APE shares. In the event APE had converted by the end of March, or even in early April, the put options would have served their intended purpose. Should the conversion be delayed pending the result of the preliminary injunction hearing currently scheduled for April 27, 2023, however, my put option hedges will be rendered completely ineffective.[7]

To restore some of the intended efficacy of his put options, Mr. Iacono seeks to intervene in this action both as of right and permissively under Court of Chancery Rule 24. If his Motion is granted, he intends to seek dismissal of the claims seeking equitable relief, or vacatur of the order accepting the stipulated delay of the conversion, on the grounds that the plaintiffs unreasonably delayed in bringing this action.[8] He seeks this relief in hopes that the defendant directors will then effectuate the conversion before his options expire.

On March 2, the Court entered an order of consolidation and appointment of lead plaintiffs and lead counsel that the parties had proposed on February 28.[9] On

---

[7] Mot. at 2–3.

[8] 2023-0215, D.I. 31.

[9] 2023-0215, D.I. 14; 2023-0215, D.I. 20; 2023-0216, D.I. 19; 2023-0216, D.I. 26.

March 8, the plaintiffs opposed the Motion, and Mr. Iacono replied and filed a proposed "Intervenor Complaint" on March 13.[10]

Rule 24 governs intervention by nonparties. Rules 24(a) and (b) govern intervention of right and permissive intervention, respectively:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) When a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.[11]

I begin with Mr. Iacono's request to intervene as of right. He does not press

---

[10] 2023-0215, D.I. 26; 2023-0215, D.I. 29; 2023-0215, D.I. 30; 2023-0215, D.I. 31. Mr. Iacono's reply was initially rejected by the Register in Chancery, but given that he is self-represented, I still consider it timely filed. The plaintiffs' opposition was late under the ordered briefing schedule, but given that Mr. Iacono was able to timely respond, I have considered it as well. 2023-0215, D.I. 23. Given Mr. Iacono's status as a self-represented litigant, I accept the "Intervenor Complaint" filed with his reply brief as the "pleading setting forth the claim or defense for which intervention is sought" required by Court of Chancery Rule 24, thereby assuaging one of the plaintiffs' procedural concerns. *See Southpaw Credit Opp. Master Fund LP v. Adv. Battery Techs., Inc.*, 2015 WL 915486, at *12 (Del. Ch. Feb. 26, 2015) (contemplating a party seeking to intervene could supplement the record with a proposed pleading and satisfy Rule 24).

[11] Ct. Ch. R. 24.

any statutory right.  In the absence of an unconditional statutory right to intervene, a proposed intervenor "must make a timely application to the Court that (1) asserts some significant, legally protectable interest which relates to the transaction or the property which forms the subject matter of the main action, and (2) the interest must be such that, as a practical matter, the disposition of the pending lawsuit may impede or impair the intervenor's ability to protect that interest, and (3) the intervenor must show that the existing parties to the lawsuit are not adequately presenting the intervenor's interest."[12]  "In order to constitute a protectable interest under Rule 24(a)(2), the intervenor's claim must bear a sufficiently close relationship to the dispute between the original litigants. Thus, the alleged interest must be 'direct' and not 'remote' or 'contingent.'"[13]  "[T]he Court must focus on the particular facts and procedural posture of the application."[14]

> [*A*] *mere general interest in the litigation*, or an interest in an issue that is collateral to the basic issues in the case, or *an indirect economic interest or motive with respect to the litigation, is not a sufficient basis for intervention pursuant to the "legally enforceable interest" standard.*  The fact that a civil proceeding may in some way affect a proposed intervenor is not sufficient to invoke a "legally enforceable interest" entitling such person to intervention.[15]

Subsumed within the Court's analysis of whether the applicant claims a sufficient interest is the inquiry of standing.[16]  "Consideration of an interven[o]r's standing is implicit in the court's analysis of the elements of Rule 24, and 'if the intervenor lacks standing to assert the claim, *ipso facto*, the interven[o]r's interest

---

[12] *Allstate Ins. Co. v. Speight*, 1992 WL 354091, at *2 (Del. Super. Nov. 10, 1992) (citing *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 568 (D. Del. 1981), and *Pennamco, Inc. v. Nardo Mgmt. Co., Inc.*, 435 A.2d 726 (Del. Super. 1981)).

[13] *Id.* (quoting 3B James Wm. Moore et al., *Moore's Federal Practice* § 24.07[2] (2d ed. 1992)).

[14] *Wilm. Tr. Co. v. Lucks*, 1999 WL 743255, at *6 (Del. Super. June 18, 1999).

[15] *Surf's Up Legacy P'rs, LLC v. Virgin Fest, LLC*, 2021 WL 6012782, at *3 (Del. Super. Dec. 16, 2021) (internal citations omitted) (quoting 7 *Goodrich-Amram* 2d § 2327:8 (2021)).

[16] *Id.*

cannot be recognized.'"[17]    Standing is a requirement for both mandatory and permissive intervention.[18]  "Although the Delaware courts embrace a liberal policy of allowing intervention, mere incantations of equitable principles will not stave off denial of a motion to intervene if the intervenor lacks standing to bring the claim . . . ."[19]

Scholars have noted that the common law describing what qualifies as an interest supporting mandatory intervention is thin.[20]  Delaware courts have held that a judgment creditor lacking any direct interest in ongoing litigation involving the debtor, but wishing to intervene to ensure payment out of any recovery, does not have a legally enforceable interest in the litigation supporting mandatory intervention.[21]  And in *Rollins Cablevue, Inc. v. Saienni Enterprises*, the United States District Court for the District of Delaware considered what qualifies as an adequate interest under Federal Rule of Civil Procedure 24.[22]  There, a business partner of the defendant sought to intervene in an action to determine the validity

---

[17] *United Rentals, Inc. v. RAM Hldgs., Inc.*, 2007 WL 4327770, at *1 (Del. Ch. Nov. 29, 2007) (quoting *Flynn v. Bachow*, 1998 WL 671273, at *4 n.15 (Del. Ch. Sept. 18, 1998)).

[18] *Noe v. Kropf*, 2008 WL 46035577, at *3 (Del. Ch. Oct. 15, 2008); *see also Surf's Up Legacy*, 2021 WL 6012782, at *2–3.

[19] *Franklin Balance Sheet Inv. Fund v. Crowley*, 2006 WL 3095952, at *3 (Del. Ch. Oct. 19, 2006) (citing *Bachow*, 1998 WL 671273, at *4).

[20] *See Allstate*, 1992 WL 354091, at *2 ("There is not as yet any clear definition, either from the Supreme Court or from the lower courts, of the nature of the 'interest relating to the property or transaction which is the subject of action' that is required for intervention of right." (quoting 7C Alan Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1908 (2d ed. 1987))).

[21] *Surf's Up Legacy*, 2021 WL 6012782, at *2–4; *Follieri Gp., LLC v. Follieri/Yucaipa Invs., LLC*, 2007 WL 2459226 (Del. Ch. Aug. 23, 2007).

[22] 115 F.R.D. 484 (D. Del. 1986).  Delaware courts give authorities applying the Federal Rules of Civil Procedure "great persuasive weight" in the construction of a parallel Delaware Rule.  *Cede & Co. v. Technicolor, Inc.*, 758 A.2d 485, 490 (Del. 2000) (quoting *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1191 n.11 (Del. 1988), and then citing *Leon N. Weiner & Assocs. v. Krapf*, 584 A.2d 1220, 1223–24 (Del. 1991), and *Hoffman v. Cohen*, 538 A.2d 1096, 1097–98 (Del. 1988)).

of a contract between the defendant and the plaintiff: if the contract was invalid, the business partner would receive the defendant's business instead of the plaintiff. The District Court held that "such a conditional interest in the validity of the subject matter of litigation which, if held valid, will affect the profitability of other business interests of the would-be intervenor, has been held to be speculative and inadequate to permit intervention under Rule 24(a)(2)."[23] It went on: "The use of intervention to ratify an independent transaction, which is not the subject matter of the litigation in which intervention is sought, does not fall within the 'relating to the property or transaction which is the subject of the action' standard of Rule 24(a)(2)."[24]

Other federal courts charged with interpreting Federal Rule of Civil Procedure 24 are in accord. Generally, the intervenor's interest must be in the claims in the action in which they wish to intervene, not in the effects that action might have on the intervenor's economic interests.[25] Federal cases also hold the interest of a judgment creditor seeking to intervene in an action involving the

---

[23] *Rollins*, 115 F.R.D. at 487 (citing *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 564 F. Supp. 1358, 1372 (D. Del. 1983) (holding an interest in patent litigation based on losing customers if the patent is valid to be too speculative to support intervention under Rule 24(a)(2)).

[24] *Id.*

[25] *E.g.*, *Trans Chem. Ltd. v. China Nat. Machinery Import & Export Corp.*, 332 F.3d 815, 823 (5th Cir. 2003) (holding that stockholders seeking to intervene in the corporation's action to confirm an arbitration award to determine whether they were still stockholders and owners of the corporation held an "economic interest" that was inadequate to support intervention given the "wholly separate" underlying cause of action); *Rosebud Coal Sales Co. v. Andrus*, 644 F.2d 849, 850–51 (9th Cir. 1981) (finding that even though a royalty rate paid to a lessor was set by the rate the lessee paid under a different contract, the lessor could not intervene into a dispute about that second contract's royalty rate; and noting that permitting intervention would open the door to "unknown thousands of interests," and "[w]hatever may be the ultimate contours of a Rule 24(a)(2) 'interest,' it cannot have been intended to include one so tenuous or so increasingly universal"); *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650–51 (N.D. Cal. 2004) (concluding a manufacturer's economic interest in the continued viability of its only customer did not constitute a legally protectable interest in a patent infringement action brought against that customer to support intervention as of right).

debtor in furtherance of collecting on its judgment does not support intervention because it is not related to the underlying subject matter of the action.[26]

Mr. Iacono's interest is not sufficiently related to the transaction at the heart of this matter. His interest is not in the merits of the plaintiffs' claims: he does not seek to contest that the defendants violated 8 *Del. C.* § 242 or that they would violate their fiduciary duties in effectuating the conversion and other aspects of the transaction. He seeks to restore the conversion to AMC's corporate agenda on the timeframe he expected not because he believes the plaintiffs' claims are meritless, but because his investment strategy depends on it. His more specific interest, which he asserts he uniquely holds, is even more attenuated: he objects to the Stipulation's delay of the conversion until after his options expire. Put another way, Mr. Iacono's interest is not in the claims themselves, but in the parties' procedural response to them. Mr. Iacono's collateral and indirect economic interest is not a sufficient basis for intervention as of right.

Nor do I see a basis to grant permissive intervention. Under Rule 24(b), permissive intervention is available at the Court's discretion "when an applicant's claim or defense and the main action" have a common question of law or fact.[27] The Court should not grant intervention when it will "unduly delay or prejudice the

---

[26] *United States v. Alisal Water Corp.*, 370 F.3d 915, 919–21 (9th Cir. 2004) (concluding a creditor's interest in collecting its debt "is several degrees removed from the overriding public health and environmental policies that are the backbone of this [Safe Drinking Water Act] litigation," and "[t]o hold otherwise would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded" (citing *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794 (9th Cir. 2002))); *Fin. Co. of Am. v. Park Hldg. Corp.*, 60 F.R.D. 504, 506 (W.D. Pa. 1973) ("The complaint of the original plaintiff asserts a claim of debt against the defendants. Likewise, the intervening plaintiffs and the proposed intervenors assert claims of debt against the defendants. But the transactions and the instruments on which the intervening plaintiffs seek to recover are completely separate from and unrelated to the transactions and instruments on which the original action is based."); *S.E.C. v. Falor*, 270 F.R.D. 372, 375–77 (N.D. Ill. 2010) (noting that Seventh Circuit authority provides "a mere 'economic interest' is not enough" to support intervention (quoting *Flying J, Inc. v. Van Hollen*, 578 F.3d 568 (7th Cir. 2009))).

[27] Ct. Ch. R. 24(b).

adjudication of the rights of the original parties."[28]  Mr. Iacono seeks to intervene for the sole purpose of protecting his tangential economic interests in put options from the parties' Stipulation to reschedule the conversion.  The legal and factual questions the original parties raised derive from their pleadings and any responses thereto—not the subsequent stipulated timing of the litigation.

On its face, I recognize Mr. Iacono's application to dismiss the plaintiffs' complaint on the basis of laches might appear to share common questions of law or fact with the defendants' motion to dismiss, the grounds of which are not yet briefed.[29]  But Mr. Iacono lacks standing to press the defense of laches against the plaintiffs.  "Laches is an unreasonable delay by a party, without any specific reference to duration, in the enforcement of a right, and resulting in prejudice to the adverse party."[30]  The plaintiffs have not asserted a claim or enforced a right against Mr. Iacono:  they do not seek to wield equity against him.  It follows that he is not an adverse party that can cry out from prejudicial delay.  Mr. Iacono

---

[28] Ct. Ch. R. 24(b)(2); *see Allstate*, 1992 WL 354091, at *3 (considering "two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending" (quoting *Smuck v. Hobson*, 408 F.2d 175, 179–80 (D.C. Cir. 1969))).

[29] The defendants' counsel hinted they would raise a laches defense in the February 23, 2023, telephonic scheduling conference.  2023-0215, D.I. 25 at 11; 2023-0216, D.I. 27 at 11.

[30] *Whittington v. Dragon Gp, LLC*, 991 A.2d 1, 7 (Del. 2009) (citing *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009)); 27A AM. JUR. 2D *Equity* § 124 (2023) (defining the elements of laches as including prejudice to "respondents," "defendant[s]," or "adverse part[ies]"); 2 John Norton Pomeroy, *Pomeroy Equity Jurisprudence* § 419, at 171–72 (5th ed. 1941) (defining laches as "such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity"); *id.* § 419(d), at 179 ("The question as to whether relief shall be granted is to be determined in view of the showing as to whether the situation of the adverse party underwent a change during the period which elapsed which the complainant delayed institution of suit.").

> ha[s] not demonstrated any standing to assert the doctrine of laches. That doctrine is normally available as a defense to bar a claimant from invoking the aid of equity, due to his unreasonable and prejudicial delay in asserting a claim. Here the party asserting laches is the . . . the [i]ntervenor[], not the defendant[s] . . ., which [are] the part[ies] normally entitled to assert laches. To permit the [i]ntervenor[] to assert a laches defense offensively in this novel fashion would stand the doctrine on its head.[31]

Mr. Iacono lacks standing to assert laches against the plaintiffs.[32] Accordingly, Mr. Iacono cannot assert any "claim or defense" that "shares a common question or law or fact with any of the parties or the events involved in this action."[33] He

---

[31] *Two S. Corp. v. City of Wilm.*, 1989 WL 76291, at *7 (Del. Ch. July 11, 1989).

[32] Viewed more broadly, Mr. Iacono seeks to intervene to make space for the defendant directors to effectuate the conversion sooner. From that perspective, Mr. Iacono also lacks standing to compel the defendant directors to restore the efficacy of his options in his investment strategy. His interest in intervening comes not from his status as an AMC stockholder, to whom the directors owe fiduciary duties, but rather from his status as a holder of put options, which inspires no such duty. *Bocock v. INNOVATE Corp.*, 2022 WL 15800273, at *27 n.171 (Del. Ch. Oct. 28, 2022) ("A 'holder of an option to purchase stock is not an equitable stockholder of the corporation.' Therefore, 'the option feature of these instruments does not qualify for the protections that flow from a fiduciary duty.'" (quoting *Harff v. Kerkorian*, 324 A.2d 215, 219 (Del. Ch. 1974), *rev'd on other grounds*, 347 A.2d 133 (Del. 1975), and then *Glinert v. Wickes*, 1990 WL 34703, at *9 (Del. Ch. Mar. 27, 1990), *aff'd*, 586 A.2d 1201 (Del. 1990))). The defendants do not owe Mr. Iacono, as an optionholder, a duty to consummate the proposed transaction before his options expire. It is unclear that they would necessarily do so if the plaintiffs' claims were dismissed. And certainly the plaintiffs, Mr. Iacono's fellow stockholders, owe him no duties with regard to the bets he placed on the conversion of APEs into common stock consistent with his expectations.

[33] *See Surf's Up Legacy*, 2021 WL 6012782, at *5; *Wier v. Howard Hughes Med. Inst.*, 404 A.2d 140, 145–46 (Del. Ch. 1979) (denying permissive intervention where "the principal motivation behind movant's application for leave to intervene in this litigation at the present time actually centers around his desire to attempt to see to it that the defendant Institute continues to make generous contributions to the University of Miami Medical Center, a concern which is not directly related to the basic issue next to be

cannot meet Rule 24(b)'s requirements for permissive intervention.

In sum, Mr. Iacono lacks an interest that supports intervention, and lacks standing to assert the defense of laches against the plaintiffs. His motion to intervene is **DENIED**. **IT IS SO ORDERED.**

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*

---

decided in this litigation, namely whether or not the defendant should continue to be managed and controlled by an Executive Committee rather than by a successor Trustee").